# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | |
|---|---|
| **CRAIG HICKS, individually and on behalf of all others similarly situated,** ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | **Case No. 1:20-cv-00532-LO-MSN** |
| **v.** ) | |
| ) | |
| **ALARM.COM INC., a Delaware Corporation,** ) | |
| ) | |
| *Defendant*. ) | |

**DEFENDANT ALARM.COM INCORPORATED'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT AND/OR TO STRIKE IMPROPER ALLEGATIONS
<u>AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

RELEVANT ALLEGATIONS................................................................................. 3

APPLICABLE LEGAL STANDARDS ................................................................... 4

I.      FED. R. CIV. P. 12(B)(6): FAILURE TO STATE A CLAIM FOR RELIEF ....................................................................................................... 4

II.     FED. R. CIV. P. 12(B)(1): LACK OF ARTICLE III STANDING...................... 5

III.    FED. R. CIV. P. 12(F): STRIKING IMPROPER ALLEGATIONS.................... 6

ARGUMENT ......................................................................................................... 6

I.      THE ENTIRE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(6)............................................................................................. 6

       a.     Plaintiff Fails to Plead Plausible TCPA Claims. ...................................... 7

              i.     Plaintiff Has Not Pled Any Facts Supporting Direct TCPA Liability............................................................................ 7

              ii.    Plaintiff Has Not Pled Any Facts Supporting Vicarious TCPA Liability........................................................................ 10

              iii.   Plaintiff Pleads Facts Contradicting His Conclusory Allegations that the At-Issue Telephone Call was "Pre-Recorded." ..................................................................... 14

              iv.   Plaintiff Has Not Pled Any Facts Supporting His Conclusions that the At-Issue Text Messages Were Sent Using an ATDS........................................................................ 15

              v.     Plaintiff Has Not Pled Any Facts Supporting a TCPA DNC Rule Violation. ............................................................ 16

       b.     Plaintiff Fails to State a Plausible VTPPA Claim................................... 19

II.     THE COMPLAINT SHOULD ALSO BE DISMISSED IN ITS ENTIRETY UNDER RULE 12(B)(1) BECAUSE PLAINTIFF LACKS ARTICLE III STANDING. .................................................................... 21

III.    ALTERNATIVELY, PLAINTIFF'S IMPROPER ALLEGATIONS SHOULD BE STRICKEN PURSUANT TO FED. R. CIV. P. 12(F). ................ 22

CONCLUSION.................................................................................................... 24

## TABLE OF AUTHORITIES

**Page**

### CASES

*Aaronson v. CHW Grp., Inc.*,
    2019 WL 8953349 (E.D. Va. Apr. 15, 2019) .................................................... passim

*ACA Int'l v. FCC*,
    885 F.3d 687 (D.C. Cir. 2018) .....................................................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................4, 9

*Atkins v. City of Chicago*,
    631 F.3d 823 (7th Cir. 2011) .....................................................................15

*Bank v. Vivint Solar, Inc.*,
    2019 WL 2280731 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted,*
    2019 WL 1306064 (Mar. 22, 2019)..............................................................11

*Baranski v. NCO Fin. Sys., Inc.*,
    2014 WL 1155304 (E.D.N.Y. Mar. 21, 2014).........................................................16

*Barker v. Sunrun Inc.*,
    2019 WL 1983291 (D.N.M. Apr. 29, 2019) ..........................................................6, 21

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...............................................................................4

*Billips v. NC Benco Steel, Inc.*,
    2011 WL 4829401 (W.D.N.C. Oct. 12, 2011)..............................................................6

*Bowoto v. Chevron Corp.*,
    2007 WL 2349338 (N.D. Cal. Aug. 14, 2007) ..........................................................23

*Bureerong v. Uvawas*,
    922 F. Supp. 1450 (C.D. Cal. 1996) ..................................................................23

*Campbell-Ewald Co. v. Gomez*,
    136 S. Ct. 663 (2016).................................................................................7

*Chapman v. CKE Restaurants Holdings, Inc.*,
    2020 WL 1230130 (E.D.N.C. Mar. 12, 2020) ..........................................................22

*Childress v. Liberty Mut. Ins. Co.*,
    2018 WL 4684209 (D.N.M. Sept. 28, 2018) ..................................................10, 12, 13

*Clayton v. Aaron's Inc.*,
    2013 WL 3148174 (E.D. Va. June 19, 2013) ..........................................................16

*Cunningham v. Politi*,
    2019 WL 2517085 (E.D. Tex. Apr. 30, 2019), *report and rec. adopted*,
    2019 WL 2524737 (E.D. Tex. June 19, 2019)..........................................................18

**TABLE OF AUTHORITIES**
(continued)

Page

*Donaca v. Dish Network, LLC*,
    303 F.R.D. 390 (D. Colo. 2014) ............................................................8, 17

*Eastern Shore Markets, Inc. v. J.D. Assoc. Long Term Disability P'ship*,
    213 F.3d 175 (4th Cir. 2000) ....................................................................5

*Fantasy, Inc. v. Fogerty*,
    984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds by* 510 U.S. 517
    (1994)...........................................................................................6, 22

*Fisher v. Alarm.com Hldgs, Inc.*,
    2018 WL 5717579 (N.D. Ill. Nov. 1, 2018) ..................................12, 13, 23

*Freidman v. Massage Envy Franchising, LCC*,
    2013 WL 3026641 (S.D. Cal. June 13, 2013)...........................................21

*Gallegos v. Roman Catholic Archbishop of San Francisco*,
    2016 WL 3162203 (N.D. Cal. June 7, 2016)..............................................22

*Gordon v. Pete's Auto Serv. of Denbigh, Inc.*,
    637 F.3d 454 (4th Cir. 2011) .................................................................20

*Gulden v. Consol. World Travel Inc.*,
    2017 WL 3841491 (D. Ariz. Feb. 15, 2017)..............................................13

*Hernandez v. Select Portfolio, Inc.*,
    2015 WL 3914741 (C.D. Cal. June 25, 2015) ...........................................15

*Herrick v. GoDaddy.com LLC*,
    312 F. Supp. 3d 792 (D. Ariz. 2018) ......................................................15

*Hurley v. Messer*,
    2018 WL 4854082 (S.D.W.Va. Oct. 4, 2018) ........................................8, 10

*Hurley v. Wayne Cty. Bd. of Educ.*,
    2017 WL 2454325 (S.D.W. Va. June 6, 2017)...........................................18

*Hurt v. Bank of Am.*,
    2012 WL 12904236 (E.D. Va. July 11, 2012), *report and rec. adopted*,
    2012 WL 12904087 (Sept. 21, 2012), *aff'd sub nom.* 511 F. App'x 256
    (4th Cir. 2013)...........................................................................14, 19

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,
    934 F. Supp. 2d 1219 (C.D. Cal. 2013) ...................................................22

*In re Easysaver Rewards Litig.*,
    737 F. Supp. 2d 1159 (S.D. Cal. 2010).....................................................23

*In re: Monitronics Int'l, Inc., TCPA Litig.*,
    223 F. Supp. 3d 514 (N.D.W.Va. 2016), *aff'd sub nom.* 885 F.3d 243
    (4th Cir. 2018)..................................................................... passim

**TABLE OF AUTHORITIES**
(continued)

Page

*In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
18 F.C.C. Rcd. 14014 (2003) ...................................................................19

*In re Thiel*,
2015 WL 773401 (W.D.N.C. Feb. 24, 2015), *aff'd*, 627 F. App'x 272
(4th Cir. 2016).........................................................................................9

*In the Matter of the Joint Petition*
*filed by Dish Network, LLC*, 28 FCC Rcd. 6574 (2013)...............................7

*Jones v. Royal Admin. Servs., Inc.*,
866 F.3d 1100 (9th Cir. 2017) ...........................................................11, 12

*Jones v. Royal Admin. Svcs., Inc.*,
887 F.3d 443 (9th Cir. 2018) .............................................................12, 13

*Jung v. Bank of Am., N.A.*,
2016 WL 5929273 (M.D. Pa. Aug. 2, 2016) ............................................17

*Kristensen v. Credit Payment Servs.*,
12 F. Supp. 3d 1292 (D. Nev. 2014) ........................................................11

*Lee v. Loandepot.com, LLC*,
2016 WL 4382786 (D. Kan. Aug. 17, 2016) ............................................18

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
134 S. Ct. 1377 (2014).............................................................................21

*Linlor v. Five9, Inc.*,
2017 WL 5885671 (S.D. Cal. Nov. 29, 2017) ..........................................11

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)...................................................................................5

*Maine State Retirement Sys. v. Countrywide Fin. Corp.*,
2011 WL 4389689 (C.D. Cal. May 5, 2011) ............................................23

*Masters v. Wells Fargo Bank S. Cent.*,
2013 WL 3713492 (W.D. Tex. July 11, 2013) ..........................................20

*McLean v. United States*,
566 F.3d 391 (4th Cir. 2009) ...................................................................24

*McReynolds v. Lowe's Cos. Inc.*,
2008 WL 5234047 (D. Idaho Dec. 12, 2008) ..........................................23

*Medina v. District of Columbia*,
643 F.3d 323 (D.C. Cir. 2011)..................................................................20

*Meeks v. Buffalo Wild Wings, Inc.*,
2018 WL 1524067 (C.D. Cal. Mar. 28, 2018)..........................................11

### TABLE OF AUTHORITIES
(continued)

**Page**

*Meilleur v. AT & T Inc.*,
2011 WL 5592647 (W.D. Wash. Nov. 16, 2011) .......................................................17

*Melito v. Am. Eagle Outfitters, Inc.*,
2015 WL 7736547 (S.D.N.Y. Nov. 30, 2015)...................................................8, 12, 13

*Meth v. Natus Med. Inc.*,
2014 WL 3544989 (E.D. Va. July 17, 2014) .................................................................6

*Mey v. Pinnacle Security, LLC*,
2012 WL 4009718 (N.D.W.Va. Sept. 12, 2012) ........................................................12

*Mims v. Arrow Fin. Servs.*,
132 S.Ct. 740 (2012)...................................................................................................20

*Naiman v. Freedom Forever, LLC*,
2019 WL 1790471 (N.D. Cal. Apr. 24, 2019) ...........................................................13

*Naiman v. TranzVia LLC*,
2017 WL 5992123 (N.D. Cal. Dec. 4, 2017)..............................................................11

*Nece v. Quicken Loans, Inc.*,
2018 WL 1326885 (M.D. Fla. Mar. 15, 2018) ...........................................................18

*Nordstrom, Inc. v. NoMoreRack Retail Grp., Inc.*,
2013 WL 1196948 (W.D. Wash. Mar. 25, 2013) .......................................................23

*Orsatti v. Quicken Loans, Inc.*,
2016 WL 7650574 (C.D. Cal. Sept. 12, 2016) .....................................................18, 19

*Papasan v. Allain*,
478 U.S. 265 (1986)......................................................................................................5

*Parkridge 6 LLC v. U.S. Dep't of Transp.*,
2010 WL 1404421 (E.D. Va. Apr. 6, 2010) .................................................................5

*Randall v. U.S.*,
30 F.3d 518 (4th Cir. 1994) ..........................................................................................5

*Reo v. Caribbean Cruise Line, Inc.*,
2016 WL 1109042 (N.D. Ohio Mar. 18, 2016) .........................................................15

*Revene v. Charles County Comm'rs*,
882 F.2d 870 (4th Cir. 1989) ........................................................................................5

*Rowland Marietta, Inc. v. Casdorph*,
2008 WL 11381425 (S.D.W. Va. Nov. 26, 2008) .....................................................11

*Sepehry-Fard v. Dep't Stores Nat'l Bank*,
15 F. Supp. 3d 984 (N.D. Cal. 2014), *aff'd in part*, 670 F.App'x 573
(9th Cir. 2016)............................................................................................................10

**TABLE OF AUTHORITIES**
(continued)

Page

*Sheski v. Shopify (USA) Inc.*,
2020 WL 2474421 (N.D. Cal. May 13, 2020) ..................................................... passim

*Simmons v. Charter Commc'ns, Inc.*,
222 F. Supp. 3d 121 (D. Conn. 2016), *aff'd*, 686 F.App'x 48 (2d Cir.
2017) ...............................................................................................................18, 19

*Smith v. State Farm Mut. Auto. Ins. Co.*,
30 F. Supp. 3d 765 (N.D. Ill. 2014) ........................................................................7, 9

*Snow v. Gen. Elec. Co.*,
2019 WL 2500407 (E.D.N.C. June 14, 2019) ........................................................3, 16

*Spokeo, Inc. v. Robins*,
136 S.Ct. 1540 (2016) .................................................................................................5

*Sprye v. Ace Motor Acceptance Corp.*,
2017 WL 1684619 (D. Md. May 3, 2017) ...............................................................5, 16

*St. Clair v. Johnny's Oyster & Shrimp, Inc.*,
76 F. Supp. 2d 773 (S.D. Tex. 1999) ........................................................................23

*Sterling v. Securus Techs., Inc.*,
2020 WL 2198095 (D. Conn. May 6, 2020) ...............................................................13

*Syed v. Mohammad*,
2016 WL 8731783 (E.D. Va. Apr. 1, 2016) ............................................................5, 16

*Taxpayers for the Animas-La Plata Referendum v. Animas-La Plata Water*
*Conservancy Dist.*,
739 F.2d 1472 (10th Cir. 1984) ................................................................................21

*Thomas-Lawson v. Koons Ford of Baltimore, Inc.*,
2020 WL 1675990 (D. Md. Apr. 6, 2020) ............................................................15, 16

*Trademark Properties, Inc. v. A & E Tel. Net.*,
2008 WL 4811461 (D.S.C. Oct. 28, 2008) ................................................................23

*Trumper v. GE Capital Retail Bank*,
2014 WL 7652994 (D.N.J. July 7, 2014) ...................................................................14

*U.S. v. $37,281.00 in United States Currency*,
2007 WL 2710706 (W.D.N.C. September 13, 2007) ....................................................6

*United Black Firefighters of Norfolk v. Hirst*,
604 F.2d 844 (4th Cir. 1979) ......................................................................................5

*United States v. Par Indus. Corp.*,
2016 WL 7175627 (S.D.W. Va. Dec. 8, 2016) ...........................................................23

*Vessal v. Alarm.com*,
2017 WL 4682736 (N.D. Ill. Oct. 18, 2017) ...............................................................8

## TABLE OF AUTHORITIES
(continued)

**Page**

*Virdis Dev. Corp. v. Bd. of Sup'rs of Chesterfield Cty., Va.*,
   92 F. Supp. 3d 418 (E.D. Va. 2015) ........................................................5

*Virginia ex rel. Jagdmann v. Real Time Int'l, Inc.*,
   2005 WL 1162937 (E.D. Va. Apr. 26, 2005) .........................................20

*Wick v. Twilio Inc.*,
   2017 WL 2964855 (W.D. Wash. July 12, 2017) .....................................10

*Wiseberg v. Toyota Motor Corp.*,
   2012 WL 1108542 (D.N.J. Mar. 30, 2012)..............................................23

*Woo v. Home Loan Group, L.P.*,
   2007 WL 6624925 (S.D. Cal. Jul. 27, 2007) ........................................6, 22

*Worsham v. Travel Options, Inc.*,
   2016 WL 4592373 (D. Md. Sept. 2, 2016), *aff'd,* 678 F.App'x 165 (4th
   Cir. 2017) ...........................................................................................16, 18

*Yor-Wic Constr. Co. v. Eng'g Design Techs., Inc.*,
   2019 WL 1412943 (W.D. La. Mar. 28, 2019) .........................................20

### STATUTES

47 U.S.C. § 227(a)(1)..........................................................................................15

47 U.S.C. § 227(b)(1)(A)(iii)................................................................................7

47 U.S.C. § 227(c)(5)..............................................................................7, 17, 18

47 U.S.C. § 227(d) .........................................................................................7, 18

Telephone Consumer Protection Act .......................................................... passim

Va. Code Ann. § 59.1-514(B) ...............................................................................7

Va. Code Ann. § 59.1-515 ...........................................................................19, 20

Va. Code Ann. § 59.1-515(A)..............................................................................20

Va. Code Ann. § 59.1-515(B)..............................................................................20

Va. Code Ann. § 59.1-515(C)..............................................................................21

Va. Code § 59.1-517(A) through (C)...................................................................20

Virginia Telephone Privacy Protection Act ................................................ passim

### OTHER AUTHORITIES

47 C.F.R. § 64.1200(a)(1).....................................................................................7

47 C.F.R. § 64.1200(a)(2).....................................................................................7

47 C.F.R. § 64.1200(c)(2)................................................................................7, 17

## TABLE OF AUTHORITIES
(continued)

                                                                    **Page**

47 C.F.R. § 64.1200(d) ...........................................................................7, 17

47 C.F.R. § 64.1200(d)(3) ............................................................................18

47 C.F.R. § 64.1200(f)(14) ......................................................................17, 18

28 FCC Rcd. at 6583 ¶ 26 ..............................................................................8

22 Am. Jur. 2d Damages § 165 .....................................................................21

5C FED. PRAC. & PROC. § 1382 (3d ed. 2004) ...............................................6

2 MOORE'S FEDERAL PRACTICE § 12.37 (3d ed. 2009)................................23

Restatement (3d) of Agency § 1.01, cmt. c ...................................................11

U.S. Const. art. III ................................................................................. passim

5A Wright & Miller, FED. PRAC. AND PROC. § 1357 (2d ed. 1990 & 1998
    Supp.)...........................................................................................................5

### RULES

Fed. R. Civ. P. 12(b)(1) ......................................................................... passim

Fed. R. Civ. P. 12(b)(6) ......................................................................... passim

Fed. R. Civ. P. 12(f)............................................................................... passim

Defendant Alarm.com Incorporated ("Alarm.com") respectfully moves this Court to dismiss the Complaint (*see* Dkt. 1, "Complaint" or "Compl.") filed by Plaintiff Craig Hicks ("Plaintiff") in the above-captioned matter: (i) for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6); and/or (ii) for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) due to a failure to meet the requirements for standing under Article III of the United States Constitution.  Should the Court decide not to dismiss, Alarm.com also respectfully moves, in the alternative, to strike certain improper allegations from the Complaint pursuant to Fed. R. Civ. P. 12(f).  In support thereof, Alarm.com submits the following incorporated memorandum of law.

## INTRODUCTION

Simply put, Plaintiff's Complaint fails to connect Alarm.com to the two purported text messages or single phone call at issue in this case in any way.  Indeed, Alarm.com is a technology company offering a cloud-based software-as-a-service platform supporting interactive security systems that are sold and installed exclusively through a network of independent service providers. Importantly, Alarm.com does <u>not</u> sell its software or any hardware to end-user consumers, ***nor does it telemarket to anyone,*** much less allow anyone else to do so on its behalf.

Despite all this, Plaintiff alleges in his threadbare Complaint, in an entirely conclusory fashion and without supporting facts, that Alarm.com violated the federal Telephone Consumer Protection Act ("TCPA") and its Virginia analog, the Virginia Telephone Privacy Protection Act ("VTPPA").  Plaintiff bases these claims on one phone call and two text messages purportedly made/sent to his cellular phone by ***an unknown third party*** without his consent.  Yet, he provides virtually no factual detail regarding the purported call or text messages, let alone the identity of the persons responsible, and what little he does provide does not connect the call or text messages to Alarm.com in any way.  Such bald allegations are ripe for dismissal for the following reasons:

1

**First**, the Court should dismiss the Complaint pursuant to Rule 12(b)(6) because Plaintiff fails to sufficiently allege any claim under the TCPA or any facts to support that claim.  Beyond failing to provide factual details about the at-issue call and text messages themselves, Plaintiff does not plead facts suggesting Alarm.com (i) took any "steps to physically" initiate or send them, as is required for direct TCPA liability, or (ii) had an agency relationship with or control over any responsible third parties who did, as required for vicarious TCPA liability.  All of Plaintiff's TCPA claims (Counts I through III) should be dismissed under Rule 12(b)(6) for these reasons alone.

**Second**, the Complaint is equally devoid of facts supporting Plaintiff's conclusory allegations in Counts I and II that the call or text messages at issue were "pre-recorded" or sent using an "automatic telephone dialing system" (or "ATDS") in violation of § 227(b) of the TCPA.  Instead, Plaintiff merely employs legal buzzwords without supporting facts, which courts, including those in this District, have routinely held is plainly insufficient to plead a plausible TCPA claim or survive dismissal.  Counts I and II should be dismissed under Rule 12(b)(6) for this additional reason.

**Third**, it is unclear which of the TCPA's two "Do Not Call" ("DNC") provisions—§ 227(c) or § 227(d)—Plaintiff was attempting to invoke in Count III of the Complaint.  Nevertheless, Plaintiff fails to plead any facts suggesting that there was a violation of either of those provisions by Alarm.com in this case.  Further, one of those provisions—specifically, § 227(d), which governs "internal" DNC procedures—does not provide a private cause of action in any event.  Plaintiff's purported DNC claim(s) should be dismissed under Rule 12(b)(6) for this reason as well.

**Fourth**, because his Complaint is devoid of facts (particularly of any alleged misconduct attributable to Alarm.com), Plaintiff's VTPPA claim in Count IV—which is based on the same threadbare and conclusory allegations as his TCPA DNC claim in Count III—fails for the same reasons.  Further, the provision of the VTPPA that Plaintiff invokes is not only limited to "individual

2

actions" but it is also nearly identical to the TCPA DNC provision at issue; thus, his VTPPA claim is improperly duplicative as it seeks the very same damages for the same alleged injuries. Therefore, Plaintiff's VTPPA claim should be dismissed under Rule 12(b)(6) for these reasons as well.[1]

**Fifth**, in addition to dismissal under Rule 12(b)(6), the Court should dismiss the Complaint in its entirety for lack of federal subject matter jurisdiction pursuant to Rule 12(b)(1) because Plaintiff cannot meet the requisite elements for Article III standing—namely, causation and redressability.[2] In this regard, Plaintiff fails to allege any facts tracing his purported harm to Alarm.com or explain how any relief from Alarm.com will redress his alleged injuries.

**Lastly**, while the Complaint should be dismissed for myriad reasons above, it also interjects various immaterial and impertinent allegations from anonymous posts on third party websites and about other lawsuits that have nothing to do with the case at bar. Thus, should the Court decide not to dismiss, it should strike those improper allegations from the Complaint under Rule 12(f).

## RELEVANT ALLEGATIONS

Plaintiff alleges that he "registered his telephone number"—which he fails to provide or clearly indicate whether it is assigned to a cellular phone—on "the national [DNC] registry on January 12, 2014." Compl. ¶ 11. He further claims to have "received a text message from phone number 954-507-9334 from Defendant promoting its home alarm services" sometime in "early April 2020." *Id*. ¶ 13. He also alleges to have immediately responded to this text with "STOP" but "[d]espite his stop request, he received another text message from Defendant a few days later." *Id*.

Plaintiff also claims that, after receiving these two text messages, "Defendant called [him]"

---

[1] If the Court dismisses the TCPA claims only, it should decline to exercise jurisdiction over Plaintiff's VTPPA claim. *See, e.g., Snow v. Gen. Elec. Co.,* 2019 WL 2500407, at *7 (E.D.N.C. June 14, 2019) (declining to exercise supplemental jurisdiction after TCPA claim dismissed).

[2] Alarm.com does not concede (and in fact disputes) Plaintiff suffered an "injury in fact" sufficient for Article III standing under the TCPA, and reserves the right to raise this at a later time.

on April 9, 2020 from the same 954 number purportedly used to send the texts "using a pre-recorded voice, without [his] consent." *Id*. ¶ 17. However, Plaintiff admits that this "voice" did <u>not</u> identify *Alarm.com* or offer him any *Alarm.com* products or services but, rather, merely "stated that it was 'Mark with home security promotion'"—<u>not</u> Alarm.com—and "solicited [him] for home alarm services" generally. *Id*. This is confirmed by the "audio file" that Plaintiff submitted with his Complaint as Exhibit A. *Id*. (referring to Dkt. 1-1). Plaintiff further alleges that "Mark" asked Plaintiff to "call him back at phone number 844-916-0448" and that, when that number is called, "the person who answers identifies the company as Alarm.com." *Id*. ¶¶ 17-18.

The foregoing represents the <u>sum total</u> of Plaintiff's "factual" allegations in his Complaint. What remains is a laundry list of conclusory, formulaic and oft-inconsistent allegations, each giving short shrift to the legal elements of his four claims without any supporting facts. *See, e.g., id.,* ¶¶ 1-3, 8-10, 14-16, 21, 24, 27-51. In sum, Plaintiff pleads no facts connecting the one call and two text messages he purportedly received to Alarm.com, and what "facts" he provides contradict his claims.

## APPLICABLE LEGAL STANDARDS

### I.   FED. R. CIV. P. 12(B)(6): FAILURE TO STATE A CLAIM FOR RELIEF

Rule 12(b)(6) provides for dismissal where a plaintiff fails to state a claim upon which relief can be granted. Under that rule, the allegations of the Complaint "must be enough to raise a right to relief above the speculative level" and provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A "bare assertion" and "conclusory allegations" will not suffice. *Id.* at 556-57. Allegations without such factual enhancements "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotations omitted). Thus, a "formulaic recitation of the elements" of a claim is inadequate. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Moreover, while the Court must generally

4

accept well-pled factual allegations as true under Rule 12(b)(6), it "need not … accept unsupported legal allegations [], legal conclusions couched as factual allegations [],or conclusory factual allegations devoid of any reference to actual events." *Sprye v. Ace Motor Acceptance Corp.*, 2017 WL 1684619, at *2 (D. Md. May 3, 2017) (citing *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989); *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979)) (internal citations and punctuation omitted).[3]

## II. FED. R. CIV. P. 12(B)(1): LACK OF ARTICLE III STANDING

Under Fed. R. Civ. P. 12(b)(1), a complaint is properly dismissed where there is a lack of federal subject matter jurisdiction. Article III of the United States Constitution confers on the federal judiciary the power to adjudicate certain cases and controversies. To establish sufficient standing under Article III: (i) a plaintiff must have suffered a concrete and particularized "injury in fact"; (ii) there must be a causal connection between the injury and the conduct complained of (*i.e.*, "causation" or "traceability"); and (iii) the injury must be capable of being redressed by a favorable decision (*i.e.*, "redressability"). *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). *See also Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) (party invoking federal subject matter jurisdiction has the burden of establishing standing). Further, like under Rule 12(b)(6), the Court also need not accept conclusory allegations lacking in supporting facts as true under Rule 12(b)(1). *See, e.g., Virdis Dev. Corp. v. Bd. of Sup'rs of Chesterfield Cty., Va.,* 92 F. Supp. 3d 418, 422 (E.D. Va. 2015). *See also Parkridge 6 LLC v. U.S. Dep't of Transp.,* 2010 WL 1404421, at *4 (E.D. Va. Apr. 6, 2010) (dismissing complaint with prejudice under Rule 12(b)(1) where the alleged unlawful conduct was

---

[3] *See also Eastern Shore Markets, Inc. v. J.D. Assoc. Long Term Disability P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (under Rule 12(b)(6), courts need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments") (citing 5A Wright & Miller, FED. PRAC. AND PROC. § 1357 (2d ed. 1990 & 1998 Supp.)); *Syed v. Mohammad,* 2016 WL 8731783, at *1 (E.D. Va. Apr. 1, 2016) ("[L]egal conclusions unsupported by allegations of specific facts are insufficient to withstand" a Rule 12(b)(6) motion.) (citing *Randall v. U.S.*, 30 F.3d 518, 522 (4th Cir. 1994)).

5

"not traceable to any of the named defendants"); *Barker v. Sunrun Inc.,* 2019 WL 1983291, at \*4

(D.N.M. Apr. 29, 2019) (dismissing TCPA case for lack of Article III standing under Rule 12(b)(1)

<u>and</u> under Rule 12(b)(6), holding "Plaintiff failed to allege any action or omission by [defendant]

that could connect its conduct to the claimed wrongful acts").

### III. <u>FED. R. CIV. P. 12(F): STRIKING IMPROPER ALLEGATIONS</u>

Under Fed. R. Civ. P. 12(f), this Court may strike "any redundant, immaterial, impertinent,

or scandalous matter" from the Complaint.[4]  In this regard, it is well settled that "[t]he function of a

[Rule] 12(f) motion ... is to avoid the expenditure of time and money that must arise from litigating

spurious issues by dispensing with those issues prior to trial" and, therefore, may be granted at the

pleadings stage. *Billips v. NC Benco Steel, Inc.,* 2011 WL 4829401, at \*1 (W.D.N.C. Oct. 12, 2011)

(quoting *U.S. v. $37,281.00 in United States Currency*, 2007 WL 2710706, \*2 (W.D.N.C. September

13, 2007)).  Thus, "'[s]uperfluous historical allegations are a proper subject of a motion to strike.'"

*Woo v. Home Loan Group, L.P.,* 2007 WL 6624925, at \*5 (S.D. Cal. Jul. 27, 2007) (quoting *Fantasy,*

*Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds by* 510 U.S. 517 (1994)

(striking allegations regarding background and foundational facts because the allegations would

have unnecessarily complicated the litigation)); *see also* FED. PRAC. & PROC. § 1382 (3d ed. 2004).

### <u>ARGUMENT</u>

### I. <u>THE ENTIRE COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(6).</u>

In Counts I and II of the Complaint (¶¶ 32-39), Plaintiff seeks relief under Section 227(b) of

the TCPA, which provides that no person shall "make any call (other than a call made for emergency

purposes or made with the prior express consent of the called party) using any [ATDS] or an artificial

---

[4] Under Rule 12(f), "[i]nformation is 'immaterial' … if it has 'no essential or important relationship to the claim for relief or the defenses being pleaded' and is 'impertinent' if it does 'not pertain, and [is] not necessary, to the issues in question.'" *Meth v. Natus Med. Inc*., 2014 WL 3544989, at \*3 (E.D. Va. July 17, 2014) (quoting 5C FED. PRAC. & PROC. § 1382 (3d ed. 2004)).

or prerecorded voice … to any telephone number assigned to a … cellular telephone service…." 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1) & (2).[5]  In Count III (¶¶ 40-45), Plaintiff seeks relief under one (or perhaps both) of the TCPA's DNC provisions, which: (i) prohibit "initiat[ing]" more than one "telephone solicitation" call in a 12-month period to a "residential telephone subscriber who has registered his or her telephone number" on the National DNC Registry; and (ii) require any "person or entity making a call for telemarketing purposes" to "honor a residential subscriber's do-not-call request" made to them within a "reasonable time" and no later than 30 days. 47 U.S.C. §§ 227(c)(5) & (d); 47 C.F.R. §§ 64.1200(c)(2) & (d).  In Count IV (¶¶ 46-51), Plaintiff seeks the same relief for the same injury as he does in Count III under the VTPPA, which similarly prohibits any "telephone solicitor" from "initiat[ing]" any "telephone solicitation call to a telephone number on the National [DNC] Registry."  Va. Code Ann. § 59.1-514(B).  However, the sparse facts alleged in support of these claims fail to satisfy federal pleadings standards for several reasons:

   a.  **Plaintiff Fails to Plead Plausible TCPA Claims.**

      i.  *Plaintiff Has Not Pled Any Facts Supporting Direct TCPA Liability.*

As an initial matter, it is well accepted that direct liability under the TCPA applies ***only*** to persons or entities that "initiate" telemarketing calls and, in this regard, the FCC has made clear that to "initiate" means to "physically place" the call.  *Sheski v. Shopify (USA) Inc.,* 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (citing *In the Matter of the Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)) (emphasis added).  *Accord In re: Monitronics Int'l, Inc., TCPA Litig.*, 223 F. Supp. 3d 514, 519 (N.D.W.Va. 2016), *aff'd sub nom.* 885 F.3d 243 (4th Cir. 2018) (citing, *inter alia, Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 771 (N.D. Ill.

---

[5] *See also Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016) (recognizing text messages qualify as "calls" under the TCPA).

2014)).  This includes claims brought under the TCPA's DNC provisions, as Plaintiff has invoked here.  *See, e.g., Donaca v. Dish Network, LLC*, 303 F.R.D. 390, 394-96 (D. Colo. 2014).

Consequently, federal courts have routinely dismissed conclusory direct TCPA liability claims that, like Plaintiff's, lack sufficient factual allegations demonstrating that the defendant actually "initiated" the phone calls or texts at issue in the sense of "***tak[ing] the steps necessary to physically place***" a call or send a text message.  *Sheski*, 2020 WL 2474421, at *3 (quoting 28 FCC Rcd. at 6583 ¶ 26) (dismissing where plaintiff's allegations did not "lead to the inference that [defendant] sent or was directly involved in sending the text messages at issue") (emphasis added).  *See also Melito v. Am. Eagle Outfitters, Inc.,* 2015 WL 7736547, at *3–5 (S.D.N.Y. Nov. 30, 2015) (dismissing where plaintiff failed to allege facts supporting inference defendant physically sent at-issue texts); *Vessal v. Alarm.com*, 2017 WL 4682736, at *2 (N.D. Ill. Oct. 18, 2017) ("There are no allegations in the complaint … that Alarm.com initiated the phone calls in the sense of taking the steps to physically place a call. Accordingly, plaintiff has not alleged facts supporting direct liability under the TCPA.").  Judges in the Fourth Circuit (including in this District) have reached the same conclusion.  *See, e.g., Monitronics, supra*; *see also Hurley v. Messer*, 2018 WL 4854082, at *3 (S.D.W.Va. Oct. 4, 2018) (dismissing where plaintiff pled no facts a defendant "physically placed the telephone calls at issue"); *Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019) (dismissing where plaintiff "failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations d[id] not show plausibly that defendant actually, physically initiated the telephone calls at issue").[6]  This Court should rule similarly here.

Indeed, the Complaint provides no facts from which this Court could remotely, let alone

---

[6] This order was later vacated for amendment purposes only, not on the merits or the sufficiency of the plaintiff's plead allegations.  *See* Case No. 1:18-cv-1533, Dkt. 36 at 2, n.1.

8

plausibly, infer that Alarm.com <u>physically</u> placed any of the at-issue phone calls/texts to Plaintiff. For example, Plaintiff alleges "[o]n information and belief"[7] that Alarm.com <u>and/or</u> third parties "acting on its behalf"—which he baldly concludes must be Alarm.com's "agents"— "made unsolicited pre-recorded voice calls and sent unsolicited autodialed text messages to thousands of consumers soliciting their purchase of home alarm services." Compl. ¶¶ 21, 33, 37. Yet, Plaintiff gives no detail about the substance of the two texts whatsoever, much less any indication that the 954 number from which they purportedly originated belonged to Alarm.com or that any of Alarm.com's products or services were offered in those texts.[8] Further, the one alleged call that followed, which Plaintiff claims originated from the same 954 number as the texts, was from "Mark with home security promotion" who never even mentioned Alarm.com; nor does Plaintiff allege that any of Alarm.com's products or services were offered on that call. Compl. ¶ 17; *see also* Dkt. 1-1 (call recording). Moreover, even assuming *arguendo* that, when the 844 number "Mark" provided is called back, "the person who answers identifies the company as Alarm.com" (Compl. ¶ 18), that does not mean that Alarm.com itself (as opposed to "Mark" or some other unrelated and unidentified third party) physically initiated the call or sent the texts at issue.[9] *See, e.g., Smith*, 30 F. Supp. 3d at

---

[7] *See also In re Thiel*, 2015 WL 773401, at *4, n.4 (W.D.N.C. Feb. 24, 2015), *aff'd*, 627 F. App'x 272 (4th Cir. 2016) (holding that "'information and belief' allegations [like Plaintiff's] should be disregarded in an *Iqbal* analysis, much as [any other] conclusory allegations must be").

[8] At best, Plaintiff's Complaint includes a link to a third party website, which reflects anonymous complaints from "other consumers" who purportedly received calls (not a text) from the 954 number. *See id.* ¶ 19 (citing https://directory.youmail.com/directory/phone/9545079334 (last visited July 2, 2020)). But what it omits is that **nothing on that website even mentions Alarm.com**.

[9] Plaintiff also does not allege that the 844 number belonged to Alarm.com. In fact, Plaintiff's Complaint includes another link to a third party website regarding the 844 number, which he posits reflects "myriad online complaints regarding [Alarm.com's] unsolicited telemarketing practices." *Id.* ¶ 22 (citing http://www.shouldianswer.com/phone-number/8449160448 (last visited July 2, 2020)). In reality, however, **nothing on that website mentions Alarm.com anywhere**; moreover, one of the anonymous commenters on that website asserts that the caller "left short message to call this [844] number back but they originally called me from a Las Vegas, Nevada number **702**-840-09xx." *Id.* (emphasis added). This further belies Plaintiff's conclusory allegations that the 954 number allegedly used to contact him had anything to do with Alarm.com.

9

771 ("[A] seller generally does not 'initiate' calls placed by [alleged] third-party telemarketers."); *Wick v. Twilio Inc.*, 2017 WL 2964855, at *3 (W.D. Wash. July 12, 2017) ("The FCC recognizes that merely offering a good or service for sale does not mean that a retailer initiates the marketing calls for that product" for direct TCPA liability); *Aaronson,* 2019 WL 8953349, at *2 ("[A]t the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that [physically] made the calls" at issue to state a plausible direct TCPA liability claim.).

Thus, because the Complaint does not allege any facts that Alarm.com physically initiated or sent the call or either of the texts at issue, all three of Plaintiff's TCPA claims (Counts I through III) should be dismissed under Rule 12(b)(6). *See*, *e.g.*, *Monitronics, Hurley, Aaronson*, *Sheski, supra*; *Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018) (finding no direct TCPA liability where, as here, "there [were] no factual allegations that [d]efendant actually made the telephone call at issue," and holding that "[t]he mere conclusion that the [ATDS] responsible for the call belonged to [d]efendant, without any factual allegations to support that conclusion, does not constitute a factual allegation that, if proven, would establish that [d]efendant 'made,' or 'physically placed' the call to [p]laintiff's cell phone"); *Sepehry-Fard v. Dep't Stores Nat'l Bank*, 15 F. Supp. 3d 984, 987–88 (N.D. Cal. 2014), *aff'd in part*, 670 F.App'x 573 (9th Cir. 2016) (dismissing where "no facts alleged showing *why* plaintiff believe[d] the [defendants] were responsible for specifically identified calls … in violation of the TCPA") (emphasis in original).

### ii. *Plaintiff Has Not Pled Any Facts Supporting Vicarious TCPA Liability.*

As noted above, Plaintiff's Complaint is unclear on who Plaintiff believes actually called or texted him—*i.e.*, Alarm.com, Alarm.com's alleged "agents" or some other "third-party acting on its behalf." Thus, it is also unclear whether Plaintiff contends that Alarm.com is directly or vicariously liable under the TCPA, or both. To the extent Plaintiff contends Alarm.com is vicariously liable

under the TCPA in this case, this claim fails under Rule 12(b)(6) for several reasons:

In this or any context, vicarious liability generally requires a special consensual relationship between a principal and an agent and control over the agent by the principal.  *See, e.g., Rowland Marietta, Inc. v. Casdorph*, 2008 WL 11381425, at *10 (S.D.W. Va. Nov. 26, 2008) ("[T]he concept of agency posits a consensual relationship in which one person ... acts as a representative of or otherwise acts on behalf of another person with power to affect the legal rights and duties of the other person. The person represented has a right to control the actions of the agent.") (quoting Restatement (3d) of Agency § 1.01, cmt. c).   More specifically, "[a]gency is the **fiduciary relationship** that arises when one person (a 'principal') **manifests assent** to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the **principal's control**, and the agent manifests assent or otherwise consents so to act."  *Naiman v. TranzVia LLC*, 2017 WL 5992123, at *6 (N.D. Cal. Dec. 4, 2017) (quoting *Jones v. Royal Admin. Servs., Inc.*, 866 F.3d 1100, 1105 (9th Cir. 2017) (citing Restatement § 1.01)) (emphasis added).  This requires "more than mere passive permission; it involves request, instruction, or command."  *Linlor v. Five9, Inc.*, 2017 WL 5885671, at *3 (S.D. Cal. Nov. 29, 2017).   And "[t]hough 'the precise details of the agency relationship need not be pleaded to survive a [Rule 12(b)(6)] motion to dismiss, sufficient facts must be offered to support a reasonable inference that an agency relationship existed.'"  *Meeks v. Buffalo Wild Wings, Inc.,* 2018 WL 1524067, at *5 (C.D. Cal. Mar. 28, 2018) (quoting *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014)).  *See also Bank v. Vivint Solar, Inc.*, 2019 WL 2280731, at *3 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted,* 2019 WL 1306064 (Mar. 22, 2019) ("The existence of *some* connections between the defendant and the maker of the call will not suffice" to state a viable claim for vicarious TCPA liability.) (emphasis in original).

Further, in the TCPA context, courts have widely recognized that vicarious liability cannot

11

attach without the **"essential ingredient" of control**.  *See, e.g., Monitronics*, 223 F. Supp. 3d at 520 ("[I]n order to prove actual agency [for vicarious TCPA liability], the plaintiff must show that the defendant controlled or had the right to control the purported agent and, more specifically, the manner and means of the solicitation campaign that was conducted.") (citing *Mey v. Pinnacle Security, LLC*, 2012 WL 4009718 (N.D.W.Va. Sept. 12, 2012)).  *See also Jones v. Royal Admin. Svcs., Inc.,* 887 F.3d 443, 450 (9th Cir. 2018); *Aaronson*, 2019 WL 8953349, at *3 (citing *Jones*, *Childress*, and *Monitronics*).  Thus, not only do courts routinely dismiss TCPA claims premised on vicarious liability at the pleading stage, but also the vast majority have held that failure to allege sufficient facts establishing an agency relationship with or control over an agent is fatal to such claims.  *See, e.g.*, *Fisher v. Alarm.com Hldgs, Inc*., 2018 WL 5717579, at *3 (N.D. Ill. Nov. 1, 2018) (granting 12(b)(6) motion where bald allegation that "a caller directed [plaintiff] to the Alarm.com website" did not "support a reasonable inference that Alarm.com is the principal and the third-party caller is an agent controlled by Alarm.com"); *Aaronson*, 2019 WL 8953349, at *3 (dismissing where "conclusory, boilerplate allegation plainly fail[ed] to provide any ***facts*** to demonstrate an agency relationship between defendant and the party who physically initiated the call") (citing *Melito*, emphasis in original); *Childress*, 2018 WL 4684209, at *3 (a plaintiff "cannot simply allege general control in a vacuum"); *Sheski*, 2020 WL 2474421, at *4 (dismissing where "[t]here [we]re no factual allegations that support any sort of agency relationship outside of Plaintiff's conclusory statement that 'Defendants and their agents transmit text messages'").  Such is true for the case at bar.

Here, Plaintiff does not—and indeed cannot—allege the essential ingredient of control and, therefore, has failed to plead facts supporting a claim for vicarious TCPA liability.  As noted above, the Complaint includes only vague references to some unnamed "third parties" or alleged "agents" of Alarm.com.  But it does <u>not</u> allege with non-conclusory supporting facts, for example, that: (1)

Alarm.com had any relationship with any third party that sent or made the at-issue texts or call; (2) Alarm.com exerted any control over any such third party; (3) Alarm.com supervised or controlled the texts or call in any manner; (4) the third party was operating as part of Alarm.com's business; (5) Alarm.com had supplied such third party with tools and instrumentalities to send the texts or make the call; or (6) Alarm.com and that third party maintained a long-term or permanent working relationship.  *See*, *e.g*., *Jones*, 887 F.3d at 450 (analyzing these and other factors in holding that seller was not vicariously liability for telemarketer's alleged TCPA violations).  *See also Monitronics*, 223 F. Supp. 3d at 520-525 (discussing similar factors relevant to agency).  In fact, none of Plaintiff's allegations show that Alarm.com even knew that the call or texts were made/sent by any purported "agent," let alone that Alarm.com had any control over those persons, their actions, or the manners or means in which the call/texts were made or sent.  Thus, to the extent Plaintiff seeks to hold Alarm.com vicariously liable under the TCPA, his Complaint falls far short of satisfying federal pleading standards and, therefore, Counts I through III should be dismissed under Rule 12(b)(6).[10] *See, e.g., Aaronson, Fisher, Melito, Childress, Sheski, and Banks, supra.  See also Gulden v. Consol. World Travel Inc.*, 2017 WL 3841491, at *3 (D. Ariz. Feb. 15, 2017) (dismissing where plaintiff "offer[ed] no factual support" for his conclusion that the "[d]efendant was the source of the alleged calls," and ruling that ***"[b]ecause identity is a necessary element of all of Plaintiff's [TCPA] claims, this deficiency warrants dismissal of all of Plaintiff's claims.***") (emphasis added); *Naiman v.*

---

[10] Seemingly in an attempt to support an entitlement to treble damages for a "willful and knowing" violation of the TCPA (*see* Compl. ¶ 28(f)), Plaintiff again concludes without any supporting facts that Alarm.com, *inter alia*, engaged in a "general cold call-based marketing scheme" and is somehow "shift[ing] the burden of wasted time to the consumers it texts with unsolicited messages." *Id.* ¶¶ 9, 16.  Considering that he does not plead any facts connecting Alarm.com to any wrongdoing, these bald conclusory allegations are likewise insufficient to meet federal pleading standards and should be rejected on their face. *See, e.g., Sterling v. Securus Techs., Inc.,* 2020 WL 2198095, at *6 (D. Conn. May 6, 2020) (dismissing where allegations that TCPA violations were willful or knowing were mere legal conclusions unsupported by further factual allegations).

*Freedom Forever, LLC,* 2019 WL 1790471, at *3 (N.D. Cal. Apr. 24, 2019) (dismissing, in part, where vicarious TCPA liability allegations were "wholly conclusory").

### iii. *Plaintiff Pleads Facts Contradicting His Conclusory Allegations that the At-Issue Telephone Call was "Pre-Recorded."*

Count I of the Complaint (*see* ¶¶ 32-35) turns solely on whether the Plaintiff received a "prerecorded voice" message on his cell phone. In that regard, Plaintiff states he "believes" that the "April 9, 2020 call used a prerecorded voice based on the generic and impersonal nature of the call, and the fact that ***other consumers*** have complained about receiving calls transmitting ***the identical*** prerecorded voice message." Compl. ¶ 19 (emphasis added). He then attaches an "audio file" of the call he allegedly received as Exhibit 1 and cites to a third party website purportedly containing these "identical" messages sent from the 954 number purportedly used to send the at-issue texts. *Id.* ¶¶ 17, 19 (citing https://directory.youmail.com/directory/phone/9545079334 (last visited July 2, 2020). *See also* Dkt. 1-1 (Notice of Manual Filing of Exhibit 1). Yet, not only does that website not even mention Alarm.com as noted above, but listening to the other recordings on that website quickly reveals they are <u>not</u> identical—either to the one Plaintiff purportedly received ***or to each other***—as Plaintiff inaccurately alleges. Therefore, the only plausible (if not probable) inference to draw from these allegations is that these messages were left by a live person, which further belies and warrants dismissal of Count I. *See, e.g., Trumper v. GE Capital Retail Bank,* 2014 WL 7652994, at *2 (D.N.J. July 7, 2014) (dismissing where plaintiff plead "no factual allegations suggesting that the voice on the other end of the line was prerecorded"); *Aaronson,* 2019 WL 8953349, at *3 (allegations suggesting plaintiff spoke to a "live, human representative" was insufficient to infer that call was prerecorded) (citing *Trumper*). *See also Hurt v. Bank of Am.*, 2012 WL 12904236, at *3 (E.D. Va. July 11, 2012), *report and rec. adopted*, 2012 WL 12904087 (Sept. 21, 2012), *aff'd sub nom.,* 511 F.App'x 256 (4th Cir. 2013) ("a plaintiff 'can plead himself out of court by pleading facts that show

that he has no legal claim'") (quoting *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011)).

*See also Hernandez v. Select Portfolio, Inc.*, 2015 WL 3914741, at *10 (C.D. Cal. June 25, 2015)

("Contradictory allegations [like Plaintiff's] are inherently implausible" and thus insufficient to

withstand dismissal under Rule 12(b)(6).).

### iv. Plaintiff Has Not Pled Any Facts Supporting His Conclusions that the At-Issue Text Messages Were Sent Using an ATDS.

A critical element of Plaintiff's TCPA claim in Count II (*see ¶¶* 36-39) is that the alleged

texts were sent using an ATDS.[11]  Without factual allegations pleaded in support of this element, a

plaintiff fails to state a TCPA claim under § 227(b).  *See, e.g., Reo v. Caribbean Cruise Line, Inc.*,

2016 WL 1109042, at *4 (N.D. Ohio Mar. 18, 2016) (To demonstrate ATDS use at the pleadings

stage, a plaintiff must allege facts showing "why they believe[ ] that an ATDS was used.").

Thus, courts in the Fourth Circuit (including this one) and elsewhere routinely dismiss

pleadings containing only a formulaic recitation of the elements of a TCPA claim that an ATDS was

used to initiate calls/texts.  *See, e.g., Thomas-Lawson,* 2020 WL 1675990, at *4 (dismissing where

complaint "allege[d] functionalities of certain text messaging equipment, [but] it allege[d] no factual

basis for [p]laintiff's assertion that [defendant] used that … equipment to send the single text

message to her phone"); *Aaronson*, 2019 WL 8953349, at *4 ("[M]erely alleging, in a conclusory

fashion, that defendant used an ATDS or parroting the statutory definition of an ATDS to describe

---

[11] The TCPA defines an ATDS as "equipment which has the capacity ... to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers."  47 U.S.C. § 227(a)(1).  As one judge in this District aptly noted, however, "the *defining characteristic* of an ATDS is the ability to 'dial numbers *without human intervention*.'"  *Aaronson*, 2019 WL 8953349, at *3 (quoting *ACA Int'l v. FCC*, 885 F.3d 687, 695, 703 (D.C. Cir. 2018); *Herrick v. GoDaddy.com LLC*, 312 F. Supp. 3d 792, 801 (D. Ariz. 2018)) (emphasis added).  *See also Thomas-Lawson v. Koons Ford of Baltimore, Inc.,* 2020 WL 1675990, at *4 (D. Md. Apr. 6, 2020) (dismissing where "the allegations in the [c]omplaint indicate[d] that the text message [at issue] was sent to [p]laintiff because of her prior business interactions with [defendant], *not because of random [or sequential] number generation*" as required by § 227(a)(1)) (emphasis added).

15

the equipment used is insufficient to show plausibly that the telephone calls were made to plaintiff's cellular phone via an ATDS.") (citing *Baranski v. NCO Fin. Sys., Inc.*, 2014 WL 1155304, at \*6 (E.D.N.Y. Mar. 21, 2014)); *Snow,* 2019 WL 2500407, at \*4-6 (dismissing where the text messages at issue "did not reach [plaintiff] randomly"); *Sprye*, 2017 WL 1684619, at \*5 (dismissing where plaintiff alleged defendant used an ATDS "without factual support or further elaboration"); *Worsham v. Travel Options, Inc*., 2016 WL 4592373, at \*6 (D. Md. Sept. 2, 2016), *aff'd,* 678 F.App'x 165 (4th Cir. 2017) (dismissing where complaint only included "bare, conclusional allegations" regarding ATDS use); *Clayton v. Aaron's Inc.*, 2013 WL 3148174, at \*3 (E.D. Va. June 19, 2013) ("Plaintiff fails to allege any facts regarding the general content, number, timing, or phone number from which any of the alleged messages were sent that show that it is plausible that Defendant used autodialing.").  Such is true here, and it further supports dismissal of Count II.

In this case, the <u>totality</u> of Plaintiff's ATDS allegations regarding the at-issue texts consists of a handful of vague references to "autodialers," "automated texts," "automated text messages," "an automated telephone dialing system," "dialing equipment," and "autodialed calls."  Compl. ¶¶ 14, 16, 21, 24, 26, 37.  In other words, Plaintiff merely states that the purported texts were sent using an ATDS in violation of the TCPA, yet he provides zero facts supporting that conclusion.  *Id.*  In short, Plaintiff's unadorned ATDS allegations are utterly insufficient under federal pleading standards and, therefore, Count II of the Complaint should be dismissed under Rule 12(b)(6) on this basis, too.  *See, e.g., Aaronson*, *Thomas-Lawson*, *Snow*, *Sprye*, *Worsham*, and *Clayton*, *supra*.  *See also Syed,* 2016 WL 8731783, at \*1 ("[L]egal conclusions unsupported by allegations of specific facts [like what Plaintiff has pled here] are insufficient to withstand a motion to dismiss under Rule 12(b)(6).").

### v.   *Plaintiff Has Not Pled Any Facts Supporting a TCPA DNC Rule Violation.*

Beyond failing to plead any facts supporting a claim under Section 227(b) of the TCPA,

Plaintiff also pleads no facts indicating a violation of the TCPA's DNC rules.  At first blush, Plaintiff

appears to invoke Section 227(c)(5) of the TCPA and the implementing regulations relating thereto

(*i.e.,* 47 C.F.R. § 64.1200(c)(2)), which together provide a private cause of action for calls initiated

in violation of the National DNC Registry.  *See* Compl. ¶¶ 41, 43-45.  Yet Plaintiff also seemingly

invokes the TCPA's "internal" DNC rules (*i.e.,* 47 C.F.R. § 64.1200(d)), which are regulations

promulgated under the "technical and procedural standards" in Section 227(d) of the TCPA.  *See*

Compl. ¶ 42.  Regardless, Plaintiff's effort to state a claim under either section fails on several levels:

First, a violation of the TCPA's National DNC Registry rules requires a "residential

telephone subscriber" to have received more than one "telephone solicitation" call or text message

in a 12-month period "***by or on behalf of the same entity***." 47 U.S.C. § 227(c)(5); 47 C.F.R. §§

64.1200(c)(2) & (f)(14) (emphasis added).[12]  But because Plaintiff fails to connect Alarm.com to the

at-issue text messages or call here as discussed above, his DNC claim likewise fails as a matter of

law.  *See, e.g., Donaca,* 303 F.R.D. at 394-96 (under § 227(c)(5) of the TCPA, a defendant must

have "physically placed" the call or be vicariously liable under common law agency principles); *see

also Meilleur v. AT & T Inc.,* 2011 WL 5592647, at *2 (W.D. Wash. Nov. 16, 2011) (dismissing

where plaintiff did not allege more than one telephone solicitation call from the defendant in a 12-

month period); *Jung v. Bank of Am., N.A.,* 2016 WL 5929273, at *9 (M.D. Pa. Aug. 2, 2016)

(dismissing due to failure to adequately plead that the at-issue calls were "solicitations").

Second, applying the plain statutory language, numerous courts have held Section 227(c)

applies only to subscribers of ***residential landlines***, not cell phones or business numbers.  *See, e.g.,*

---

[12] A "telephone solicitation" is defined in the TCPA's implementing regulations as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person" without their "prior express invitation or permission." 47 C.F.R. § 64.1200(f)(14).

*Cunningham v. Politi*, 2019 WL 2517085, at *4 (E.D. Tex. Apr. 30, 2019), *report and rec. adopted*, 2019 WL 2524737 (June 19, 2019) (dismissing, noting: "The private right of action created by … § 227(c)(5) is accordingly limited to redress for violations of the regulations that concern residential telephone subscribers.  Recent courts considering claims asserted by Plaintiff have found this not to encompass Plaintiff's cellular phones and have dismissed his claims.") (citing various cases).[13]  In the present case, Plaintiff only alleges to have received the call/texts at issue on his cell phone, and does not allege that it is used exclusively for "residential" purposes.  *See* Compl. ¶ 2, 13, 17.

Third, various courts—including in the Fourth Circuit—have recognized that a violation of the TCPA's "internal" DNC rules under Section 227(d) does not give rise to a private cause of action. *See, e.g., Hurley v. Wayne Cty. Bd. of Educ.,* 2017 WL 2454325, at *4 (S.D.W. Va. June 6, 2017); *Worsham*, 2016 WL 4592373, at *4-5.  Thus, to the extent Plaintiff was attempting to plead such a claim here (and it is not clear that he was), it likewise fails as a matter of law.

Fourth, even if the TCPA's "internal" DNC rules provided for a private cause of action, Plaintiff has pled no facts suggesting a violation occurred.  To the contrary, as the regulations he invokes plainly indicate, there is a 30-day "safe harbor" to honor a request to be placed on an internal DNC list.  *See* 47 C.F.R. § 64.1200(d)(3).  *Cf, Simmons v. Charter Commc'ns, Inc.,* 222 F. Supp. 3d 121, 140 (D. Conn. 2016), *aff'd*, 686 F.App'x 48 (2d Cir. 2017) ("The mere fact that he received a call after his January 9 request [to be put on the defendant's internal DNC list] is not a subsection (d)(3) violation.").[14]  In fact, the FCC has noted that internal DNC requests should be honored

---

[13] *See also Lee v. Loandepot.com, LLC,* 2016 WL 4382786, at *6 (D. Kan. Aug. 17, 2016) (Under §227(c), Plaintiff "must establish that his cellular number is used for residential purposes.").

[14] Even in the few instances where courts have recognized a private cause of action under Section 227(d), they have held that "a telemarketer must implement a procedure to honor a do-not-call request in a reasonable time." *Nece v. Quicken Loans, Inc*., 2018 WL 1326885, at *6-7 (M.D. Fla. Mar. 15, 2018) (granting summary judgment for defendant in part) (emphasis added); *Orsatti v. Quicken Loans, Inc*., 2016 WL 7650574, at *7 (C.D. Cal. Sept. 12, 2016) (granting Rule 12(b)(6) motion to dismiss where only other alleged call was within 30-day safe harbor).

"within a *few days or weeks*" as opposed to immediately.  *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, ¶ 94 (2003) (emphasis added).

In this case, Plaintiff allegedly received the texts in "early April 2020" followed by the call on April 9, 2020, which is a span of nine days at most.  Compl. ¶¶ 13, 17.  Thus, even if Plaintiff had responded to the first text with "STOP" (*i.e.*, asked to be put on the sender's DNC list) as alleged (*id.* ¶ 13), that request was apparently honored within a reasonable time, and he pleads nothing to the contrary.  *See Orsatti,* 2016 WL 7650574, at *7; *see also Simmons*, 222 F. Supp. 3d at 140-141 (holding defendant not logging plaintiff's internal DNC request until over two weeks after it was made did not raise an issue of fact as to whether it followed procedures when plaintiff was not called outside the 30-day window).  Thus, through his contradictory and inherently implausible allegations, Plaintiff has again "ple[d] himself out of court" by showing he has no claim under Section 227(d) of the TCPA.  *Hurt,* 2012 WL 12904236, at *3; *Hernandez* 2015 WL 3914741, at *10.

### b. Plaintiff Fails to State a Plausible VTPPA Claim.

Plaintiff's VTPPA claim (Count IV of the Complaint) is based on the same alleged call/texts and seeks fundamentally (if not precisely) the same relief as his TCPA DNC claim.  That claim likewise fails and should be dismissed under Rule 12(b)(6) for several reasons:

First, because Plaintiff's VTPPA claim is based on the same threadbare and conclusory allegations lacking in supporting facts as his TCPA DNC claim (Count III), his VTPPA claim should also be dismissed under Rule 12(b)(6) for all the same reasons discussed above.

Second, the VTPPA, by its plain language, only affords damages and possible attorneys' fees for an "individual action" and not class actions.  *See* Va. Code Ann. § 59.1-515.  Thus, Plaintiff's effort to obtain relief under the VTPPA on behalf of putative class members fails as a matter of law.

Third, a plaintiff generally may not receive a "double recovery under different legal theories

19

for the same injury." *Gordon v. Pete's Auto Serv. of Denbigh, Inc.,* 637 F.3d 454, 460 (4th Cir. 2011). *See also Medina v. District of Columbia*, 643 F.3d 323, 328 (D.C. Cir. 2011) ("[I]f a federal claim and a state claim arise from the same operative facts, and seek identical relief, an award of damages under both theories will constitute double recovery."). In this regard, while the VTPPA has various other provisions the TCPA does not (and that are not alleged here), Plaintiff only seeks relief under the VTPPA provision designed to prevent calls made to numbers on the National DNC Registry (*see* pp. 6-7, *supra*), which is entirely duplicative of the relief he already seeks under Section 227(c) of the TCPA in Count III. Further, like the TCPA, the VTPPA also provides for statutory damages of $500 per call, which may be trebled to $1500 for willful violations, for an "individual action." *See* Va. Code Ann. § 59.1-515(A) & (B).[15] That Plaintiff plainly seeks the ***same*** damages under the VTPPA for the ***same*** alleged injury as his TCPA DNC claim further supports dismissal of Count IV. *See, e.g., Yor-Wic Constr. Co. v. Eng'g Design Techs., Inc.,* 2019 WL 1412943, at *4 (W.D. La. Mar. 28, 2019) ("A claim can be dismissed as duplicative under Rule 12(b)(6) when it seeks identical damages as another claim asserted in the complaint.") (citations omitted); *Masters v. Wells Fargo Bank S. Cent.,* 2013 WL 3713492, at *3 (W.D. Tex. July 11, 2013) ("There is no indication in either the TCPA or in Texas's analogue [statute] that either legislative body intended to allow double recovery under both state and federal law for the same TCPA violations. The Court's conclusion is reinforced by *Mims*….") (citing *Mims v. Arrow Fin. Servs.,* 132 S.Ct. 740, 747 (2012)

---

[15] *Cf. Virginia ex rel. Jagdmann v. Real Time Int'l, Inc.,* 2005 WL 1162937, at *3, n.1 (E.D. Va. Apr. 26, 2005) (determining default judgement in case brought by the Commonwealth alleging the same violations of the TCPA and VTPPA provisions at issue in this case, noting: "Va. Code § 59.1-517(A) through (C) [which is substantially similar to § 59.1-515] provides for injunctive relief, damages for aggrieved persons in the amount of $500 for each violation, additional civil penalties up to $1,000 for each willful violation, and reasonable expenses incurred in investigating and preparing the case and attorneys' fees. ***However, the Commonwealth is not seeking damages under the VTPPA, as each of the violations is covered by the TCPA.***") (emphasis added).

(holding federal and state courts enjoy concurrent jurisdiction over TCPA claims)).[16]

## II.  THE COMPLAINT SHOULD ALSO BE DISMISSED IN ITS ENTIRETY UNDER RULE 12(B)(1) BECAUSE PLAINTIFF LACKS ARTICLE III STANDING.

In addition to dismissal under Rule 12(b)(6), the Court should also dismiss the Complaint pursuant to Rule 12(b)(1) for lack of Article III standing because Plaintiff fails to plead sufficient facts demonstrating the essential elements of causation or redressability.

Causation for Article III standing requires that the "injury in fact" be "fairly traceable" to the defendant's conduct. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014). As shown above, Plaintiff fails to plead sufficient (or any) facts showing, *inter alia*: (i) any conduct directly or indirectly attributable to Alarm.com or (ii) that there is any relationship between Alarm.com and any third party who may have called or texted him. Plaintiff does not even allege basic facts about the content of the alleged call or texts, and what few "facts" he does allege are contradictory and inherently implausible. Because Plaintiff fails to allege facts by which one could trace his purported injury to Alarm.com's conduct, he lacks Article III standing; therefore, this Court lacks subject matter jurisdiction and his Complaint should be dismissed under Rule 12(b)(1) for this reason. *See, e.g., Barker,* 2019 WL 1983291, at *4 (plaintiff lacked standing for TCPA claim where alleged injury was not traceable to defendant); *Freidman v. Massage Envy Franchising, LCC,* 2013 WL 3026641, at *4 (S.D. Cal. June 13, 2013) (plaintiff lacked standing for TCPA claim where plaintiff did not allege facts from which the court could "infer direct or vicarious liability").

Moreover, Plaintiff also has not shown his claims can be redressed by Alarm.com. In

---

[16] Plaintiff may argue that the VTPPA provides for attorneys' fees and costs, whereas the TCPA does not. As one court aptly noted, however, "[s]uch expenses are generally not considered 'damages' because they are not the legitimate consequence of the tort … sued upon." *Taxpayers for the Animas-La Plata Referendum v. Animas-La Plata Water Conservancy Dist.*, 739 F.2d 1472, 1480 (10th Cir. 1984) (citing 22 Am. Jur. 2d Damages § 165). Nor are fees and costs guaranteed under the VTPPA in any event. *See* Va. Code Ann. § 59.1-515(C) (a person "*may* be awarded under section A or B reasonable attorney fees and court costs") (emphasis added).

addition to statutory damages and other relief, "Plaintiff seeks an injunction requiring [Alarm.com] to cease making unsolicited pre-recorded voice calls to consumers…." Compl. ¶ 3. But because he pleads absolutely no facts showing any conduct attributable *to* Alarm.com, his injury is not capable of being redressed *by* Alarm.com. Indeed, enjoining Alarm.com from actions it is not taking cannot prevent unidentified third parties from calling/texting him, and imposing statutory or other damages on Alarm.com will not prevent further unlawful conduct of any third party who may have placed unsolicited calls/texts to him. Thus, Plaintiff lacks Article III standing, and consequently the Court should dismiss the Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction.[17]

## III.   ALTERNATIVELY, PLAINTIFF'S IMPROPER ALLEGATIONS SHOULD BE STRICKEN PURSUANT TO FED. R. CIV. P. 12(F).

Plaintiff's Complaint attempts to interject various immaterial, impertinent, and unduly prejudicial allegations. *See* Compl. ¶¶ 19, 22, 23 (referring to anonymous posts on third-party websites and unadjudicated TCPA lawsuits against Alarm.com). Should the Complaint survive dismissal, therefore, the Court should strike those improper allegations under Rule 12(f).

As noted above, courts have recognized that "'[s]uperfluous historical allegations are a proper subject of a motion to strike.'" *Woo,* 2007 WL 6624925, at *5 (S.D. Cal. Jul. 27, 2007) (quoting *Fantasy* at 1527); *see also Gallegos v. Roman Catholic Archbishop of San Francisco*, 2016 WL 3162203, at *5 (N.D. Cal. June 7, 2016) (striking irrelevant references "involving a different plaintiff, and different underlying events"). The same is true for allegations about unauthenticated and unadjudicated complaints in other cases or anonymous internet commentary. *See, e.g., In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 934 F. Supp. 2d 1219, 1226 (C.D. Cal. 2013);

---

[17] Of course, because Plaintiff "lacks [Article III] standing for h[is] individual claim[s]" against Alarm.com, he also "lacks standing to pursue a nationwide class action" for those claims. *Chapman v. CKE Restaurants Holdings, Inc.*, 2020 WL 1230130, at *7 (E.D.N.C. Mar. 12, 2020).

22

*Maine State Retirement Sys. v. Countrywide Fin. Corp.*, 2011 WL 4389689, at *20 (C.D. Cal. May 5, 2011); *McReynolds v. Lowe's Cos. Inc.*, 2008 WL 5234047, at *7 (D. Idaho Dec. 12, 2008); *Wiseberg v. Toyota Motor Corp.*, 2012 WL 1108542, at *13 (D.N.J. Mar. 30, 2012).[18]

In this regard, Paragraphs 19, 22 and 23 of the Complaint contain numerous improper allegations and thus should be stricken in their entirety under Rule 12(f).[19]  Indeed, Plaintiff refers to anonymous posts on third party websites in Paragraphs 19 and 22 that he suggests are reflective of "complaints" regarding Alarm.com's "unsolicited telemarketing practices" when, in reality, Alarm.com is not mentioned on either website, as noted above.  Similarly, in Paragraph 23, Plaintiff curtly notes "Alarm.com has been previously sued over its TCPA violations."  As the district judge in one such case aptly noted, however, "nothing in th[ose] case[s] supports an inference that Alarm.com is liable for the calls [allegedly] made ***here***."  *Fisher*, 2018 WL 5717579, at *3 (emphasis added).  Thus, the Court should strike these superfluous "historical allegations" under Rule 12(f).

---

[18] In fact, numerous courts have opined on the efficacy of internet commentary, or rather the complete lack thereof.  *See, e.g., In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1168 (S.D. Cal. 2010) (noting that information from the internet does not "bear an indicia of reliability") (citations omitted); *Nordstrom, Inc. v. NoMoreRack Retail Grp., Inc.*, 2013 WL 1196948, at *13 (W.D. Wash. Mar. 25, 2013) ("The majority of complaints are from anonymous [i]nternet users that have posted on various blogs and forums online ... designed to facilitate negative feedback from disgruntled customers or even competitors, who can write multiple reviews across multiple forums ... [this] evidence is not persuasive"); *Trademark Properties, Inc. v. A & E Tel. Net.*, 2008 WL 4811461, at *2, n. 2 (D.S.C. Oct. 28, 2008) ("The accuracy and reliability of information from the [i]nternet is highly questionable."); *St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 76 F. Supp. 2d 773, 774-75 (S.D. Tex. 1999) (noting that the internet is "one large catalyst for rumor, innuendo, and misinformation," with "no way of verifying authenticity of alleged contentions").

[19] Further, because the VTPPA only provides for damages and possible fees in an "individual action" and not for class actions (*see* Section I.b. *supra*), Plaintiff's proposed "VTPPA Class" should also be stricken for this reason.  *See, e.g., Bowoto v. Chevron Corp.*, 2007 WL 2349338, at *2 (N.D. Cal. Aug. 14, 2007) (courts may also strike "any part of the prayer for relief when the damages sought are not recoverable as a matter of law" under Rule 12(f) at the pleadings stage) (quoting *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1478 n. 34 (C.D. Cal. 1996)).  *See also United States v. Par Indus. Corp.*, 2016 WL 7175627, at *1 (S.D.W. Va. Dec. 8, 2016) ("motions to strike requests for certain types of relief … are ***generally granted*** if such relief is not recoverable under the applicable law") (citing 2 MOORE'S FEDERAL PRACTICE § 12.37 (3d ed. 2009)) (emphasis added).

## <u>CONCLUSION</u>

For these reasons, Alarm.com respectfully requests that the Court enter an order dismissing the Complaint with prejudice under Rules 12(b)(6) and 12(b)(1),[20] or in the alternative, striking Paragraphs 19, 22 and 23 of the Complaint and Plaintiff's proposed "VTPPA Class" under Rule 12(f), along with granting Alarm.com all other relief deemed just and proper.

Dated: July 2, 2020                                   Respectfully submitted,

                                                      By: /s/ Andrew Zimmitti
                                                          Andrew Zimmitti
                                                          John W. McGuinness (Admitted *Pro Hac Vice*)
                                                          MANATT, PHELPS & PHILLIPS, LLP
                                                          1050 Connecticut Avenue, NW, Suite 600
                                                          Washington, D.C. 20036
                                                          Telephone: 202-585-6500
                                                          Facsimile: 202-585-6600
                                                          azimmitti@manatt.com
                                                          jmcguinness@manatt.com

                                                          A. Paul Heeringa (Admitted *Pro Hac Vice*)
                                                          MANATT, PHELPS & PHILLIPS, LLP
                                                          151 North Franklin Street, Suite 2600
                                                          Chicago, IL 60606
                                                          Telephone: 312-529-6308
                                                          Facsimile: 312-529-6315
                                                          pheeringa@manatt.com

                                                          *Attorneys for Defendant*
                                                          *Alarm.com Incorporated*

---

[20] *See McLean v. United States*, 566 F.3d 391, 396 (4th Cir. 2009) (Generally, "a dismissal for failure to state a claim under Rule 12(b)(6) is presumed ... to be rendered with prejudice.").

24

## <u>CERTIFICATE OF SERVICE</u>

I certify that on, July 2, 2020, a true and correct copy of the foregoing document was electronically filed with the Court's ECF system to be sent via the electronic notification system to all counsel of record in the above-captioned matter.

By: /s/ Andrew Zimmitti
Andrew Zimmitti
MANATT, PHELPS & PHILLIPS, LLP
1050 Connecticut Avenue, NW, Suite 600
Washington, D.C. 20036
Telephone: 202-585-6500
Facsimile: 202-585-6600
azimmitti@manatt.com