**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRA DIVISION**

| | |
|---|---|
| **CRAIG HICKS,** individually and on behalf of all others similarly situated, | Case No. 1:20-cv-00532-LO-MSN |
| *Plaintiff,* | |
| *v.* | |
| **ALARM.COM INC.,** a Delaware Corporation, | |
| *Defendant.* | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S**
<u>**MOTION TO DISMISS AND/OR TO STRIKE**</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION .................................................................................................... 1

BACKGROUND ...................................................................................................... 4

    The Telephone Consumer Protection Act of 1991 ........................................... 4

    Plaintiff's Allegations .................................................................................... 5

ARGUMENT ........................................................................................................... 6

I.      THE COURT SHOULD DENY THE MOTION TO
        DISMISS UNDER 12(b)(6) ..................................................................... 6

        1.    Plaintiff Adequately Pleads Alarm.com's Direct TCPA Liability.............. 7

        2.    Plaintiff is Not Required to Address Defendant's Irrelevant
             Vicarious Liability Argument ................................................... 9

        3.    Plaintiff Sufficiently Pleads Facts Supporting the Conclusion that
             Defendant's Calls Were Made with a Pre-Recorded
             Voice and/or an ATDS................................................................ 9

        4.    Plaintiff Adequately Pleads a Claim under the
             TCPA's DNC Provision................................................................. 9

        5.    Plaintiff States a Claim under the Virginia Telephone
             Privacy Protection Act .............................................................. 16

II.     THE COURT SHOULD DENY THE MOTION TO
        DISMISS UNDER 12(b)(1) ................................................................... 18

III.    THE COURT SHOULD ALSO DENY THE MOTION TO STRIKE ................. 20

CONCLUSION....................................................................................................... 20

## **TABLE OF AUTHORITIES**

**CASES**                                                                     **Page(s)**

*Aaronson v. CHW Grp., Inc.*,
   No. 1:18-CV-1533, 2019 WL 8953349 (E.D. Va. Apr. 15, 2019) ...........................................8

*ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*,
   No. 18-1268, 2019 WL 758292 (4th Cir. Feb. 21, 2019) .......................................................6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................................6

*Barr v. Am. Ass'n of Political Consultants*,
   No. 19-631, 2020 U.S. LEXIS 3544 (U.S. July 6, 2020) .......................................................4

*Boger v. Trinity Heating & Air, Inc.*,
   No. CV TDC-17-1729, 2018 WL 1851146 (D. Md. Apr. 18, 2018)......................................17

*Carpenter* v. *United States*,
   —— U.S. ——, 138 S. Ct. 2206, 201 L.Ed.2d 507 (2018).....................................................14

*Charvat v. NMP, Ltd. Liab. Co.*,
   656 F.3d 440 (6th Cir. 2011) ................................................................................................16

*Childress v. Liberty Mut. Ins. Co.*,
   No. 17-CV-1051, 2018 WL 4684209 (D.N.M. Sept. 28, 2018) ..............................................9

*Edwards v. City of Goldsboro*,
   178 F.3d 231 (4th Cir. 1999) ..................................................................................................6

*Hamilton v. Spurling*,
   No. 3:11-CV-00102, 2013 WL 1164336 (S.D. Ohio Mar. 20, 2013)....................................15

*Hodgin v. Parker Waichman LLP*,
   No. 3:14-cv733-DJH, 2015 WL 13022289 (W.D. Ky. Sept. 30, 2015) ................................15

*Homeland Training Ctr., LLC v. Summit Point Auto. Research Ctr.*,
   594 F.3d 285 (4th Cir. 2010) ..................................................................................................9

*Hurley v. Messer*,
   No. 3:16-9949, 2018 WL 4854082 (S.D.W.Va. Oct. 4, 2018).................................................8

*Jackson v. Lightsey*,
   775 F.3d 170 (4th Cir. 2014) ..................................................................................................6

*Virginia ex rel. Jagdmann v. Real Time Int l, Inc.*,
   No. 4:04CV125, 2005 WL 1162937 (E.D. Va. Apr. 26, 2005).........................................15, 17

ii

*Johansen v. Vivant, Inc.*,
No. 12 C 7159, 2012 WL 6590551 (N.D. Ill. Dec. 18, 2012) ................................................11

*Keim v. ADF Midatlantic, LLC*,
No. 12-80577-CIV, 2015 WL 11713593 (S.D. Fla. Nov. 10, 2015) ......................................10

*Krakauer v. Dish Network, L.L.C.*,
925 F.3d 643 (4th Cir. 2019) ................................................................................................20

*LaVigne v. First Cmty. Bancshares, Inc.*,
215 F. Supp. 3d 1138 (D.N.M. 2016) ...............................................................................2, 18

*Mainstream Mktg. Servs., Inc. v. FTC*,
283 F. Supp. 2d 1151 (D. Colo. 2003) .............................................................................12, 13

*Meilleur v. AT & T Corp.*,
No. C11-1025, 2012 WL 367058 (W.D. Wash. Feb. 2, 2012) .............................................15

*Mims v. Arrow Fin. Servs., LLC*,
565 U.S. 368 (2012) ................................................................................................................4

*In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*,
223 F. Supp. 3d 514 (N.D.W. Va. 2016) ............................................................................8, 9

*Perez v. Wisconsin Dep't of Corrs.*,
182 F.3d 532 (7th Cir. 1999) ................................................................................................14

*Phillips v. Mozes, Inc.*,
No. 2:12-cv-04033-JEO, 2014 WL 12589671 (N.D. Ala. Sept. 3, 2014) ..............................14

*Riley v. California*,
573 U.S. 373 (2014) ...............................................................................................................14

*Scott v. 360 Mortg. Grp., LLC*,
No. 17-cv-61055, 2017 U.S. Dist. LEXIS 207513 (S.D. Fla. Dec. 14, 2017) ..................10, 11

*SD3, LLC v. Black & Decker Inc.*,
801 F.3d 412 (4th Cir. 2015) ..................................................................................................6

*Sheski* v. *Shopify (USA) Inc.*,
No. 19-cv-06858, 2020 WL 2474421 (N.D. Cal. May 13, 2020) ............................................8

*Smith v. Royal Bahamas Cruise Line*,
No. 14-cv-03462, 2016 WL 232425 (N.D. Ill. Jan. 20, 2016) ...............................................10

*Southwell v. Mortgage Investors Corp. of Ohio, Inc.*,
No. C13-1289 MJP, 2013 WL 6049024 (W.D. Wash. Nov. 15, 2013) ..................................16

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016), *as revised* (May 24, 2016) ........................................................19

*St. Louis Heart Ctr., Inc. v. Vein Ctrs. for Excellence, Inc.*,
    No. 4:12 CV 174 CDP, 2013 U.S. Dist. LEXIS 174975 (E.D. Mo. Dec. 11,
    2013) ........................................................................................................................18

*Stevens-Bratton v. Trugreen, Inc.*,
    No. 2:15-2472, 2020 U.S. Dist. LEXIS 17783 (W.D. Tenn. Feb. 4, 2020) .............................14

*Susinno v. Work Out World Inc.*,
    862 F.3d 346 (3d Cir. 2017) ............................................................................................15

*Ung v. Universal Acceptance Corp.*,
    198 F. Supp. 3d 1036 (D. Minn. 2016) ...........................................................................19

*United States v. Dish Network LLC*,
    75 F. Supp. 3d 916 (C.D. Ill. 2014) ..................................................................................15

*Vessal v. Alarm.com*,
    No. 17 C 2188, 2017 WL 4682736 (N.D. Ill. Oct. 18, 2017) ............................................5, 8

*Yor-Wic Constr. Co. v. Eng'g Design Techs., Inc.*,
    No. CV 17-0224, 2019 WL 1412943 (W.D. La. Mar. 28, 2019) ...........................................17

*Zeidel v. Nat'l Gas & Elec., Ltd. Liab. Co.*,
    No. 18 CV 06792, 2019 WL 2161546 (N.D. Ill. May 17, 2019) ...........................................11

*Zhu v. DISH Network, LLC*,
    808 F. Supp. 2d 815 (E.D. Va. 2011) ...............................................................................16

## STATUTES

15 U.S.C. § 6155 ..............................................................................................................13, 14

47 U.S.C. § 227(b) ...................................................................................................................7

47 U.S.C. § 227(b)(1)(A) ......................................................................................................10

47 U.S.C. § 227(b)(1)(A)(iii) ................................................................................................4, 7

47 U.S.C. § 227 (b)(1)(B) ........................................................................................................7

47 U.S.C. § 227(c)(5) .............................................................................................................15

Va. Code Ann. § 59.1-514(B) ...............................................................................................16

Va. Code Ann. §§ 59.1-515(A) & (C) ...................................................................................17

iv

Va. Code Ann. § 59.1-518 ..................................................................................................16

## RULES

Fed. R. Civ. P. 12(b)(1) ..................................................................................................3, 18

Fed. R. Civ. P. 12(b)(6) ..............................................................................................1, 3, 6

## OTHER AUTHORITIES

47 C.F.R. § 64.1200 .......................................................................................................15

47 C.F.R. § 64.1200(c)(2) .................................................................................................15

47 C.F.R. § 64.1200(d)(3) ............................................................................................15, 16

47 C.F.R. § 64.1200(e) ....................................................................................................14

68 Fed. Reg. at 4,632-33 .................................................................................................12

68 Fed. Reg. at 44,146-47 ...............................................................................................12

*In re Rules & Regs. Implementing the TCPA of 1991*,
    18 FCC Rcd. 14014 (July 3, 2003) ...........................................................................12

Herb Weisbaum, *Billion Robocalls Last Year*, NBC News, Jan. 17, 2018
    (*available at:* https://www.nbcnews.com/business/consumer/it-s-not-just-you-
    americans-received-30-billion-robocalls-n838406) ......................................................4

H.R. Rep. No. 110-485 ....................................................................................................13

George W. Bush, Public Papers of the Presidents of the United States: Book I
    June 27, 2003 (*available at* http://www.gpo.gov/fdsys/pkg/PPP-2003-
    book1/html/PPP-2003-book1-doc-pg702.htm) ...........................................................12

WebRecon, *WebRecon Stats for Dec 2017 & Year in Review* (last visited Oct. 29,
    2018) (*available at:* https://webrecon.com/webrecon-stats-for-dec-2017-year-
    in-review/) .....................................................................................................................4

## INTRODUCTION

This action concerns Defendant Alarm.com Inc.'s ("Alarm.com" or "Defendant") practice of making unauthorized pre-recorded voice calls and sending unauthorized text messages promoting its alarm services to consumers in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227,[1] and the Virginia Telephone Privacy Protection Act ("VTPPA"), Va. Code § 59.1-514.

 As detailed below and in his Complaint, Plaintiff Craig Hicks alleges he received unauthorized telemarketing calls from Defendant promoting its home alarm services—through unsolicited text messages and a pre-recorded voice call—notwithstanding Plaintiff's stop request and despite his phone number being listed on the national Do Not Call registry. While Defendant may claim in bold and underscored text that it does not "telemarket to anyone" (Def. Mem. at 1 (emphasis omitted)), such denials have no bearing whatsoever on a Rule 12(b)(6) motion and are also contradicted by the history of citizen complaints and past lawsuits cited in the Complaint. *See* Complaint, ¶¶ 19, 22-23.

In seeking dismissal of Plaintiff's claims, Defendant ignores and mischaracterizes Plaintiff's well-pled allegations and demands the type of proof that can be obtained only in discovery. Although Plaintiff is confident that discovery will reveal the full extent of Alarm.com's telemarketing scheme, Plaintiff's allegations go far beyond what is necessary to state a plausible

---

[1] Plaintiff's first claim is brought under the TCPA's prerecorded voice calls provision, for calls to cellular telephone numbers using a prerecorded voice message.  Plaintiff's second claim is brought under the TCPA's autodialer provision, for calls to cellular telephone numbers made using an autodialer.  And Plaintiff's third claim is brought under the TCPA's do not call list provision, for calls to consumers that registered their telephone numbers on the national Do Not Call list.  *See generally*, Complaint (ECF No. 1).

claim for holding Alarm.com liable under both the TCPA and VTPPA.  Thus, Alarm.com's Motion (ECF No. 11) should be denied for multiple reasons.

*First*, for all claims, Plaintiff sufficiently alleges that he was contacted directly by Alarm.com.  Plaintiff alleges he received text messages from Defendant promoting its home alarm services.  Plaintiff specifically states Defendant called Plaintiff from the same telephone number using a pre-recorded voice, and that the individual that called identified himself as "Mark with home security promotion."  Although there was no company identification during the first call he received, Alarm.com identified itself during subsequent calls.  Plaintiff is not required to make further allegations regarding the nature of the parties' interactions or the involvement of third parties in Alarm.com's telemarketing scheme to demonstrate Alarm.com's liability.

*Second*, Plaintiff sufficiently alleges receiving prerecorded and autodialed calls from Alarm.com because Plaintiff alleges the facts and circumstances surrounding the calls that support such an inference.  Under governing law, Plaintiff is entitled on this motion to have the facts he pled assumed to be true and also to have the benefit of all reasonable inferences that can be drawn from those facts. With regard to the use of a prerecorded message, Plaintiff unequivocally alleges that during the first call he received from "Mark" he heard a prerecorded voice message promoting home security services.  With regard to the use of an autodialer, Plaintiff alleges facts and circumstances surrounding the text messages he received from Alarm.com sufficient to raise a plausible inference that an autodialer was used, including that the text messages were commercial and generic, that they were made without consent, that he continued to receive them notwithstanding a stop request, and that they were sent from the same number used to make the pre-recorded call.  It is well established that a plaintiff alleging use of an autodialer is not expected to know or allege anything more regarding the technical capacity of the equipment used to make

2

the calls, and in fact should be permitted to proceed in discovery regarding the dialing system used even if they allege far less.

*Third*, Plaintiff sufficiently states a claim for violation of the TCPA's DNC provision based on receiving unsolicited telemarketing calls to his cell phone number that was registered with the DNC registry.  Plaintiff, like all citizens who have registered their residential phone numbers with the DNC registry, is presumptively entitled to the DNC registry's protections regardless of whether his residential phone number is assigned to a cellular phone.

*Fourth*, Plaintiff sufficiently states a VTPPA claim by alleging that he received Alarm.com's solicitous calls on a phone number registered with the DNC.  Although the TCPA is a similar statutory scheme, the VTPPA is a distinct statute that provides for different remedies that are expressly intended to be in addition to any other remedies provided by federal laws like the TCPA.  And there is nothing in the body of the VTPPA that purports to prohibit recovery of damages or attorneys' fees on a classwide basis.

*Fifth*, Alarm.com's request for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) should be denied as Defendant merely restates the same arguments from its 12(b)(6) motion to dismiss.  Contrary to Defendant's arguments, it is clear that Alarm.com's violations of the TCPA are traceable to its conduct, and that the violations are redressable.

*Finally*, allegations which bring to light the countless consumer complaints and past lawsuits against Alarm.com for similar violations of the TCPA are proper and should not be stricken from Plaintiff's Complaint because they are directly relevant to whether Alarm.com's TCPA violations were willful or knowing, entitling Plaintiff and putative class members to treble damages.

Accordingly, the Court should deny Defendant's Motion in all respects.

**BACKGROUND**

**The Telephone Consumer Protection Act of 1991**

"Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

Congress enacted the TCPA in 1991 in response to overwhelming consumer complaints about the substantial intrusion on personal and residential privacy caused by the growing number of unwanted phone calls, and by automated calls. Pub. L. No. 102-243, § 2(5)-(6), 105 Stat. 2394, 2394 (1991). To protect the privacy interests implicated by these calls, Congress made it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" to a cell phone or similar service. 47 U.S.C. § 227(b)(1)(A)(iii).

Despite the enactment of this federal statute public outrage about the proliferation of intrusive, nuisance telemarketing practices has continued. *See Mims v. Arrow Fin. Servs.*, *LLC*, 565 U.S. 368, 372 (2012). Out of every 7,000,000 robocalls, there's only one TCPA lawsuit in federal court. *Compare* Herb Weisbaum, *It's Not Just You—Americans Received 30 Billion Robocalls Last Year*, NBC News, Jan. 17, 2018 (*available at:* https://www.nbcnews.com/business/consumer/it-s-not-just-you-americans-received-30-billion-robocalls-n838406) (30.5 billion robocalls); *with* WebRecon, *WebRecon Stats for Dec 2017 & Year in Review* (last visited Oct. 29, 2018), https://webrecon.com/webrecon-stats-for-dec-2017-

year-in-review/ (4,392 TCPA complaints).  Yet, despite that fact, Alarm.com has been sued previously for its telemarketing conduct. *See e.g., Vessal v. Alarm.com*, No. 17 C 2188 (N.D. Ill.)*, Fisher v. Alarm.com Holdings, Inc.*, No. 18 CV 2299 (N.D. Ill.), *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, No. 15-CV-06314-YGR (N.D. Cal.).

<u>**Plaintiff's Allegations**</u>

Alarm.com is a company that provides home alarm services. *See* Complaint (ECF No. 1) ¶ 8.  To increase its sales, and as part of a general cold call-based marketing scheme, Alarm.com markets its services using pre-recorded voice calls and text messages to consumers. *Id.* ¶ 9.  At no point has Plaintiff sought out or solicited information regarding Alarm.com's services. *Id.* ¶ 15.

Plaintiff is a resident of Virginia. *Id.* ¶ 4. Plaintiff registered his telephone number on the national Do Not Call registry on January 12, 2014. *Id.* ¶ 11. Plaintiff's telephone number is not associated with a business and is for personal use. *Id.* ¶ 12.

In early April 2020, Plaintiff received a text message from phone number 954-507-9334 from Defendant promoting its home alarm services. *Id.* ¶ 13.  In response to the unsolicited text message, Plaintiff responded with the text message "STOP." *Id.*  Despite his stop request, he received another text message from Defendant a few days later. *Id.*

On April 9, 2020 Defendant called Plaintiff from the phone number 954-507-9334 using a pre-recorded voice, without Plaintiff's consent. *Id.*  ¶ 17.  The pre-recorded voice stated that it was "Mark with home security promotion," solicited Plaintiff for home alarm services, and asked that Plaintiff call him back at phone number 844-916-0448. *Id.* When 844-916-0448 is called, the person who answers identifies the company as Alarm.com. *Id.*

Plaintiff believes the April 9, 2020 call used a prerecorded voice based on the generic and impersonal nature of the call, and the fact that other consumers have complained about receiving

calls transmitting the identical prerecorded voice message. *Id.* ¶¶ 19, 22-23.

## ARGUMENT

## I.   THE COURT SHOULD DENY THE MOTION TO DISMISS UNDER 12(b)(6)

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of a plaintiff's complaint. *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The federal "pleading standard does not require detailed factual allegations." *ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*, No. 18-1268, 2019 WL 758292, at *3 (4th Cir. Feb. 21, 2019).

In applying this standard, the Fourth Circuit liberally construes the complaint, taking all facts pleaded as true and drawing all reasonable inferences in the plaintiff's favor. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Courts must be careful, then, not to subject the complaint's allegations to the familiar 'preponderance of the evidence' standard." *SD3, LLC v. Black & Decker Inc.*, 801 F.3d 412, 425 (4th Cir. 2015). "When a court confuses probability and plausibility, it inevitably begins weighing the competing inferences that can be drawn from the complaint." *Id.* It is not a court's "task at the motion-to-dismiss stage to determine 'whether a lawful alternative explanation appear[s] more likely' from the facts of the complaint. *Id.*

### 1.    Plaintiff Adequately Pleads Alarm.com's Direct TCPA Liability.

The TCPA prohibits any person from "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice... to any telephone number assigned to a... cellular telephone service." 47 U.S.C. § 227 (b)(1)(A)(iii).  Similarly, 47 U.S.C. § 227 (b)(1)(B) makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party."  Plaintiff sufficiently states a claim under 47 U.S.C. § 227(b).

Plaintiff has plainly alleged that Alarm.com directly made the calls at issue.  Plaintiff's factual allegations include the following statements:

> Defendant is a company that provides home alarm services. To increase its sales, and as part of a general cold call-based marketing scheme, ***Defendant markets its services using pre-recorded voice calls and text messages to consumers***. . . .
>
> ***Defendant's telemarketing efforts include the use of autodialers to send telemarketing text messages***. Recipients of these text messages, including Plaintiff, did not consent to receive them. . . .
>
> ***Defendant used this equipment*** because it allows for thousands of automated texts to be sent at one time. Through this method, Defendant shifts the burden of wasted time to the consumers it texts with unsolicited messages.

*See* Complaint (ECF 1) ¶¶ 8-9, 14-16 (emphasis added).

With respect to Plaintiff specifically, the Complaint alleges, "Defendant called Plaintiff from phone number 954-507-9334 using a pre-recorded voice, without Plaintiff's consent. The pre-recorded voice stated that it was "Mark with home security promotion," solicited Plaintiff for home alarm services, and asked that Plaintiff call him back at phone number 844-916-0448.  *Id.* ¶ 17. Plaintiff's allegations continue, "[w]hen 844-916-0448 is called, the person who answers identifies the company as Alarm.com." *Id.* ¶ 18.  As such, Plaintiff has alleged that the first and

*only* actual company identified in these TCPA violative calls was Alarm.com. Given the foregoing, Plaintiff undoubtedly set forth sufficient allegations that Defendant made the calls at issue.

In its motion, Defendant purports to controvert these allegations, claiming that "Alarm.com does <u>not</u> sell its software or any hardware to end-user consumers, **nor does it telemarket to anyone**, much less allow anyone else to do so on its behalf." Def. Mem. at 1 (emphasis in original). But Defendant's emphatic bolding and underscoring does not change the fact that, on a Rule 12 motion, it is required to accept the factual allegations in the Complaint as true, not attempt to dispute them.

And the cases cited by Alarm.com in support of its position do not overcome the Complaint's well-pled allegations. In fact, none of those cases involve the circumstances here, where Plaintiff alleges that when the phone number identified in the prerecorded voice message was called back, the agent identified as "Alarm.com."

For example, in *Sheski* v. *Shopify (USA) Inc*., No. 19-cv-06858, 2020 WL 2474421 (N.D. Cal. May 13, 2020), the court found that the complaint's allegations did not lead to the inference that defendant, the provider of a platform to a third party that was used by another defendant to send text messages, could have been directly liable for sending text messages under the TCPA. Similarly, in *In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 223 F. Supp. 3d 514, 516 (N.D.W. Va. 2016), *aff'd sub nom. Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243 (4th Cir. 2018), and *Vessal v. Alarm.com*, No. 17 C 2188, 2017 WL 4682736, at *2 (N.D. Ill. Oct. 18, 2017), the plaintiffs did not attempt to plead that any of the home security service provider defendants (Alarm.com, UTC, and Honeywell) were directly liable. And in *Aaronson v. CHW Grp., Inc.*, No. 1:18-CV-1533, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019), and *Hurley v.*

8

*Messer,* No. 3:16-9949, 2018 WL 4854082, at *3 (S.D.W.Va. Oct. 4, 2018), although the plaintiffs did attempt to plead liability, their complaints included only specific allegations that the defendants engaged in telemarketing and not the specific fact, as here, that when the number identified in the prerecorded voice call to Plaintiff was called back, the agent identified as "Alarm.com."

By seemingly demanding that Plaintiff plead something more than this, Defendant is urging the Court to adopt an arbitrary, heightened pleading standard.  The purpose of the pleading requirements under Federal Rule of Civil Procedure 8 is to "give the defendant fair notice of what the . . . claim is and the grounds upon it rests." *Id*. at 555.  Plaintiff has given Defendant notice of the factual basis of his claims.

> ### 2.   Plaintiff is Not Required to Address Defendant's Irrelevant Vicarious Liability Argument.

Plaintiff has not alleged vicarious liability and is not required to because it is a separate theory of liability. *Childress v. Liberty Mut. Ins. Co.*, No. 17-CV-1051, 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018).  But Plaintiff could have alleged both if he chose to.  It is well-settled law that "plaintiffs are allowed to plead alternative theories of liability." *See Homeland Training Ctr., LLC v. Summit Point Auto. Research Ctr.*, 594 F.3d 285, 295 (4th Cir. 2010). Notwithstanding, at this stage of the proceedings, based on the information available, Plaintiff has alleged only that Defendant directly placed the calls at issue.

> ### 3.   Plaintiff Sufficiently Pleads Facts Supporting the Conclusion that Defendant's Calls Were Made with a Pre-Recorded Voice and/or an ATDS.

First, the Complaint clearly alleges that Plaintiff received a ***pre-recorded*** voice call on April 9, 2020, without Plaintiff's consent.  Complaint ¶ 17.  Plaintiff believes the April 9, 2020 call used a ***pre-recorded*** voice based on the generic and impersonal nature of the call, and the fact that other consumers have complained about receiving calls transmitting the identical ***pre-recorded***

voice message. *Id.* ¶ 19.

Alarm.com attempts to distort Plaintiff's allegations by claiming that the website Plaintiff references in his Complaint does "not even mention Alarm.com" and that "listening to the other recordings on that website quickly reveals they are not identical—either to the [prerecorded call] Plaintiff purportedly received or to each other . . . ." Def. Mem. at 14. Both of these facts are irrelevant to Plaintiff's allegations that at least one of the recordings on the website is ***exactly the same*** in every respect as the one he received, and that when the number identified in the that recording is called back, the agent identifies as "Alarm.com." Complaint at ¶ 18.

*Second,* to state a claim under the TCPA's autodialer provision, 47 U.S.C. § 227(b)(1)(A), a plaintiff must plausibly allege, among other things, that he was called on his cellular telephone number using an autodialer. At this stage of the proceedings, a TCPA plaintiff sufficiently alleges that calls were made using an autodialer by identifying "circumstances surrounding" the calls that "create a plausible inference of autodialing," including: their "commercial" content; that multiple calls were made to the same recipient; and that they were made without the recipient's consent. *See Keim v. ADF Midatlantic, LLC*, No. 12-80577-CIV, 2015 WL 11713593, at *4 (S.D. Fla. Nov. 10, 2015) ("Together, these allegations are more than sufficient to plead the autodialer element of Keim's TCPA claim."); *see Scott v. 360 Mortg. Grp., LLC*, No. 17-cv-61055, 2017 U.S. Dist. LEXIS 207513, at *17 (S.D. Fla. Dec. 14, 2017) ("Plaintiffs alleging the use of a particular type of equipment under the TCPA are generally required to rely on indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages, to raise an inference that an automated dialer was utilized. Prior to the initiation of discovery, courts cannot expect more."); *Smith v. Royal Bahamas Cruise Line*, No. 14-cv-03462, 2016 WL 232425, at *3-4 (N.D. Ill. Jan. 20, 2016) (finding that several calls to the same recipient supports

the inference that the defendant used an autodialer); *Zeidel v. Nat'l Gas & Elec., Ltd. Liab. Co.*, No. 18 CV 06792, 2019 WL 2161546, at *3 (N.D. Ill. May 17, 2019) (listing factors that can suggest the use of an ATDS).

This is because "it is unreasonable to require a plaintiff in a TCPA complaint, without the benefit of discovery, to elaborate on the specific technical details of a defendant's alleged ATDS …." *Johansen v. Vivant, Inc.*, No. 12 C 7159, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012). But "[i]t is not unreasonable, however, to require a plaintiff to describe the phone messages he received in laymen's terms or provide the circumstances surrounding them to establish his belief that the messages were … delivered via the ATDS." *Id*. "This approach does not burden plaintiffs unduly by requiring pleading of technical details impossible to uncover without discovery …." *Id*. Plaintiff clears this hurdle by a wide margin.

Plaintiff's allegations alone are sufficient to state a claim that Defendant made a call using an ATDS, including that (1) the call was commercial and generic in nature, (2) it was made without Plaintiff's consent, (3) Defendant used the same number to send the text messages and make the prerecorded call to Plaintiff, (4) Defendant identified itself in a subsequent call, and (5) that other consumers received similar telemarketing calls under similar circumstances.  Complaint ¶¶ 17-18.

The Complaint alleges at least five different facts supporting the conclusion at this stage of the litigation that Alarm.com used an autodialer to make unsolicited calls.  Therefore, Plaintiff "meet[s] his 'obligation to provide the grounds of his entitlement to relief, and provide sufficient notice to Defendant to answer the complaint.'"  *Scott*, 2017 U.S. Dist. LEXIS 207513, at *17-18. At the pleading stage, Plaintiff is not expected to know more about the dialer used to call him.  *See id.*

### 4. Plaintiff Adequately Pleads a Claim under the TCPA's DNC Provision.

Plaintiff sufficiently alleges that the telephone number Alarm.com called is entitled to the DNC registry's protections because it is registered with the DNC, is not associated with a business, and is used for personal purposes. The fact that Plaintiff's residential telephone number registered on the DNC happens to be a cell phone number (as opposed to a landline) does not change that conclusion.

Many Americans communicate using their cellular phones and, in some instances, a cellular telephone is the only telephone a consumer may have. Not surprisingly, the President of the United States, the FTC, and the FCC all stated, even before the National Do Not Call Registry's effective date, that wireless numbers were covered by the Registry laws. George W. Bush, Public Papers of the Presidents of the United States: Book I at pp. 702-03, June 27, 2003 (*available at* http://www.gpo.gov/fdsys/pkg/PPP-2003-book1/html/PPP-2003-book1-doc-pg702.htm); 68 Fed. Reg. at 44,146-47; 68 Fed. Reg. at 4,632-33. Furthermore, wireless numbers on the Registry are presumed to be "residential" numbers under FCC's rules. *Id.*

The FCC noted in 2003 that "there is nothing in section 227 to suggest that only a customer's 'primary residential telephone service' was all that Congress sought to protect through the TCPA." *In re Rules & Regs. Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, 14038, ¶ 35 (July 3, 2003). The FCC "conclude[d] that wireless subscribers may participate in the national do-not-call list." *Id.* at 14039 ¶ 36. "[W]e will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'" *Id.*

In fact, Congress's desire to include wireless number on the Registry is evident from their subsequent conduct. In September 2003, shortly before the Registry rules were to take effect, a district court in Colorado blocked the Registry. *Mainstream Mktg. Servs., Inc. v. FTC*, 283 F. Supp.

2d 1151, 1171 (D. Colo. 2003). One argument the telemarketers in that case made was that Congress had not authorized the creation of the Registry. Id. at 1168-71. Within days, Congress and the President responded by enacting Public Law 108-82, which granted FTC authority "to implement and enforce a national do-not-call registry." National Do Not Call Registry, Pub. L. No. 108-82, 117 Stat. 1006 (2003). That act also specifically "ratified" the "do-not-call registry provision of the Telemarketing Sales Rule." *Id.*

The district court's decision blocking the Registry was quickly stayed, 345 F.3d 850 (10th Cir. Oct. 7, 2003), and then reversed, 358 F.3d 1228 (10th Cir. 2004). The Registry that Congress authorized and that the Tenth Circuit allowed to take effect soon became "one of the most popular Federal programs in history." H.R. Rep. No. 110-485, at 4. Still, the system functioned as expected despite the rush of consumers wishing to avoid unwanted telemarketing calls. The Registry went from zero to 51 million registrations within 13 weeks. As a result of the dynamic growth of the Registry, the telemarketing industry subsequently complained to FTC and to Congress that there were phone numbers on the Registry that should not be there. Congress reacted by passing the Do-Not-Call Improvement Act of 2007. 15 U.S.C. § 6155. Rather than respond to the telemarketing industry's concerns by requiring the FTC to remove wireless numbers from the Registry, the new law actually heightened the Registry's protections.

First, the law rejected the telemarketing industry's concerns and directed that all phone numbers—including all of those that had been registered or would be registered—"shall not be removed" and were to be retained indefinitely on the Registry, specifically superseding FTC's five-year registration period. 15 U.S.C. § 6155(a). Second, and most relevant here, the law permitted three—and only three—categories of numbers to be removed from the Registry. *Id.* The first category of numbers that Congress directed could be removed is "disconnected and

reassigned" numbers, which were to be removed by the FTC only upon consulting "national or other appropriate databases." *Id.* § 6155(b). The second category is "invalid telephone numbers," which the FTC may remove "at any time." *Id.* The third category is numbers that are removed "upon the request of the individual to whom the telephone number is assigned." *Id.* § 6155(a).

The Do-Not-Call Improvement Act of 2007 deals a fatal blow to Alarm.com's arguments against applying the DNC registry's protections to cell phone numbers, as Congress prohibited the FTC from removing the very phone numbers to which Defendant objects. 15 U.S.C. § 6155. In other words, Congress "could have written a statute" requiring removal of the categories of phone numbers, "but it did not." *E.g., Perez v. Wisconsin Dep't of Corrs.,* 182 F.3d 532, 534-35 (7th Cir. 1999) (rejecting an interpretation of a statute that sought to add requirements that Congress could have included, but did not). Instead, Congress told FTC to retain all the numbers on the Registry except the three limited categories that it authorized to be removed.

Congress's action is consistent with the role wireless telephones play in modern society. Cellular telephones "are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." *Riley v. California*, 573 U.S. 373, 385 (2014). Cellular telephones can be used for residential purposes. *Stevens-Bratton v. Trugreen, Inc.,* No. 2:15-2472, 2020 U.S. Dist. LEXIS 17783, at *14 (W.D. Tenn. Feb. 4, 2020). The privacy interests they implicate are just as strong as wirelines, perhaps more so. *See Riley,* 573 U.S. at 393-98; *see also Carpenter* v. *United States*, ⸺ U.S. ⸺, 138 S. Ct. 2206, 2218, 201 L.Ed.2d 507 (2018). A cellular telephone can satisfy the "residential telephone subscriber" element of § 64.1200(c) & (d). *See* 47 C.F.R. § 64.1200(e); *Phillips v. Mozes, Inc.*, No. 2:12-cv-04033-JEO, 2014 WL 12569671, at *6 (N.D. Ala. Sept. 3, 2014), report and recommendation adopted in relevant part by 2015 WL 12806594 (Jan. 26, 2015); *Susinno v.*

*Work Out World Inc.*, 862 F.3d 346, 349 (3d Cir. 2017) ("Although it is true that the TCPA placed particular emphasis on intrusions upon the privacy of the home in 1991, this expression of particular concern for residential calls does not limit—either expressly or by implication—the statute's application to cell phone calls.").

Not surprisingly, other courts have explicitly rejected Alarm.com's argument. *See Hodgin v. Parker Waichman LLP*, No. 3:14-cv733-DJH, 2015 WL 13022289, at *3 (W.D. Ky. Sept. 30, 2015) (finding defendant's "assertion that cell phone numbers are not allowed on the national do-not-call list . . . meritless" and applying presumption that any number registered on the NDNC is used for residential purposes); *United States v. Dish Network LLC*, 75 F. Supp. 3d 916, 926 (C.D. Ill. 2014) (stating that "[t]he FCC determined that . . . wireless customers could register their wireless telephone numbers on the Registry").

Defendant's remaining arguments for dismissal of Plaintiff's DNC claims are largely irrelevant.  Plaintiff does not bring a claim under 47 C.F.R. § 64.1200(d)(3), and the exemption in that subsection is inapplicable to Plaintiff's National Do Not Call Registry Claim.  First, Plaintiff brings a claim under 47 C.F.R. § 64.1200(c)(2), and each subsection of the TCPA Regulations (and corresponding exemptions) are separate, and can support stand-alone claims through 47 U.S.C. § 227(c)(5). *See Meilleur v. AT & T Corp.*, No. C11-1025, 2012 WL 367058, at *1 (W.D. Wash. Feb. 2, 2012) (upholding a complaint seeking relief for a claim under 47 U.S.C. § 227(c)(5) where plaintiff only alleged violations of 47 C.F.R. § 64.1200(c)(2));  *Virginia ex rel. Jagdmann v. Real Time Int l, Inc.*, No. 4:04CV125, 2005 WL 1162937, at *3-4 (E.D. Va. Apr. 26, 2005) (discussing separate violations of various subsections of 47 C.F.R. § 64.1200); *Hamilton v. Spurling*, No. 3:11-CV-00102, 2013 WL 1164336 (S.D. Ohio Mar. 20, 2013) (analyzing claims

under each subsection of 47 C.F.R § 64.1200 separately). As such, Plaintiff's National Do Not

Call Registry Claim is sufficient to state a claim separate and apart from 47 C.F.R. § 64.1200(d)(3).

Second, the "30-day grace period" exemption referred to in 47 C.F.R. § 64.1200(d)(3) only

applies to the company-specific internal do not call list Regulations--not the National Do-Not-Call

Registry Regulations in subsection (c)(2) and is inapplicable here. *See, e.g., Southwell v. Mortgage*

*Investors Corp. of Ohio, Inc.*, No. C13-1289 MJP, 2013 WL 6049024, at *4 (W.D. Wash. Nov.

15, 2013).

### 5.    Plaintiff States a Claim under the Virginia Telephone Privacy Protection Act.

The VTPPA, is a similar but distinct statute from the TCPA. *See, e.g., Zhu v. DISH*

*Network, LLC,* 808 F. Supp. 2d 815, 819 (E.D. Va. 2011) (analyzing state consumer protection

statutes related to telephone solicitation with language "similar though not identical, to the

VTPPA" and explaining "the VTPPA provides a statutory affirmative defense, an even stronger

basis than the TCPA").  In relevant part, the VTPPA makes it illegal to "initiate, or cause to be

initiated, a telephone solicitation call to a [Virginian's] telephone number on the National Do Not

Call Registry."  Va. Code Ann. § 59.1-514(B).  Here, Plaintiff, a Virginian, sufficiently pleads a

VTPPA violation by alleging that Alarm.com initiated one or more telephone solicitation to his

telephone number registered with the DNC registry.  Complaint ¶¶ 11-13, 17-18.

By its own express terms, the VTPPA is not to "be construed to limit any remedies, causes

of action or penalties available to any person or governmental agency under any other federal or

state law."  Va. Code Ann. § 59.1-518.  The VTPPA therefore does not limit Plaintiff from

recovering under both the VTPPA and TCPA for any calls that violate both statutes.  *See also*

*Charvat v. NMP, Ltd. Liab. Co.*, 656 F.3d 440, 449 (6th Cir. 2011), which holds that the TCPA

itself contemplates the right to recovery and aggregate statutory damages under two separate TCPA provisions for calls that violate both provisions.

Contrary to Alarm.com's argument, recovering damages under two different statutory schemes for the same conduct is nothing like recovering damages under two contractual liability theories pled in the alternative as in *Yor-Wic Constr. Co. v. Eng'g Design Techs., Inc.*, No. CV 17-0224, 2019 WL 1412943, at *4 (W.D. La. Mar. 28, 2019), Alarm.com's primary support for its argument. But even if Plaintiff were not entitled to recover under both the TCPA and the VTPPA for the same calls, dismissal of either claim would be premature, particularly because, if forced to, Plaintiff may ultimately elect his VTPPA, which provides for attorneys' fees and "damages in the amount of $500 for a first violation, $1,000 for a second violation, and $5,000 for each subsequent violation," as opposed to his TCPA DNC provision claim, which does not provide for attorneys' fees and provides for up to $500 per violation in the absence of trebling    Va.  Code  Ann.  §§ 59.1-515(A) & (C).  In fact, this was precisely the district court's conclusion in *Boger v. Trinity Heating & Air, Inc.*, No. CV TDC-17-1729, 2018 WL 1851146, at *3 (D. Md. Apr. 18, 2018):

> This Court need not resolve the issue at this early stage of the case. As discussed above, the MTCPA claim will not be dismissed, at a minimum, to allow Boger to preserve a possible claim for attorney's fees. The elements of the TCPA and MTCPA claims are effectively the same, leaving the scope of discovery unaffected by the MTCPA claim's continued presence in this litigation. The question of entitlement to damages under both statutes can be addressed through briefing at a later stage of the case when the issue of the amount of damages must be decided.

*Trinity Heating & Air*, 2018 WL 1851146, at *3; *cf. Virginia ex rel. Jagdmann v. Real Time Int;l, Inc.*, 2005 WL 1162937, at *3 n.1 (E.D. Va. Apr. 26, 2005) (cited in Def. Mem. at n. 15) (explaining, without discussion of the availability of damages under both the TCPA and VTPPA based on the same call, that in seeking a default judgment, the plaintiff elected only to seek damages under the TCPA).

17

Alarm.com's argument that Plaintiff is precluded from obtaining attorneys' fees or damages for a class action is also directly at odds with Supreme Court precedent. Alarm.com's sole basis for its argument is that the heading of section 59-515, identifying remedies for VTPPA violations, includes the term "Individual action." However:

> In *Califano v. Yamasaki*, 442 U.S. 682, 99 S. Ct. 2545, 61 L. Ed. 2d 176 (1979), the Supreme Court held that statutory language creating a cause of action for 'any individual' was not enough to 'indicate that the usual Rule providing for class actions is not controlling.' Instead, the Court held that there would have to be an 'express limitation of class relief' or a 'clear expression of [legislative] intent' to exempt class actions. *Id*. at 699-700. Otherwise, the Federal Rules of Civil Procedure – including Rule 23 – govern an action.

*St. Louis Heart Ctr., Inc. v. Vein Ctrs. for Excellence, Inc.*, No. 4:12 CV 174 CDP, 2013 U.S. Dist. LEXIS 174975, at *8 (E.D. Mo. Dec. 11, 2013). Alarm.com has identified "no such limiting language" in the VTPPA or in its legislative history. *See id.*

Plaintiff is therefore entitled to pursue a VTPPA claim on a putative class basis in parallel to his TCPA DNC provision claim, and Defendant's demand to dismiss that claim should be denied.

## II.   THE COURT SHOULD DENY THE MOTION TO DISMISS UNDER 12(b)(1)

Alarm.com contends that Plaintiff's Complaint should be dismissed for lack of Article III standing. Alarm.com does not argue that Plaintiff has not adequately pleaded that he suffered an injury in fact; rather, it argues only that the Complaint should be dismissed because Plaintiff "fails to plead sufficient facts demonstrating the essential elements of causation or redressability." Mot. at 21. Indeed, because Plaintiff alleged that he suffered an injury in fact, he has demonstrated that the injury is traceable to the Defendant and may be redressed. *LaVigne v. First Cmty. Bancshares, Inc.,* 215 F. Supp. 3d 1138, 1145 (D.N.M. 2016). Defendant's Motion as to 12(b)(1) should be denied.

18

The requirements of standing are "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). For the reasons detailed in section I.1 above, it is clear that Defendant's violations of the TCPA are traceable to its conduct, and that the violations are redressable by statutory damages.

In *Ung v. Universal Acceptance Corp.*, the court was faced with a case similar to the instant matter where a consumer brought a case under the TCPA for receipt of automated telephone calls without prior consent and after the consumer requested for the calls to stop. *Ung v. Universal Acceptance Corp.*, 198 F. Supp. 3d 1036, 1037 (D. Minn. 2016). The court there held that: (1) alleged unauthorized calls were a concrete injury-in-fact sufficient to confer Article III standing; consumer's alleged injuries of receiving unauthorized cell phone calls resulted from company's conduct; and consumer's alleged injuries of receiving unauthorized cell phone calls were redressable by a favorable decision. *Id.* at 1041.  As detailed above, Plaintiff has set forth sufficient allegations that Defendant made the calls at issue.  Further, Plaintiff's alleged injuries are easily redressable. In *Ung*, the court noted "the fact the TCPA provides for statutory damages belies [Defendant's] argument that [Plaintiff's] injuries are not redressable here." 198 F. Supp. 3d at 1040 Plaintiff likewise seeks statutory damages under the TCPA. Thus, his alleged injuries are redressable.

Thus, Plaintiff satisfies the Article III requirement that the alleged injury be traceable to Defendant's conduct. Defendant's Motion to Dismiss for lack of Article III Standing should be denied.

19

## III.   THE COURT SHOULD ALSO DENY THE MOTION TO STRIKE

The Court should deny Alarm.com's alternative motion to strike certain allegations from the Complaint. Plaintiff's allegations demonstrating Alarm.com's widespread violations of the TCPA, including allegations that consumers have complained about receiving calls transmitting the identical prerecorded voice message, the myriad online complaints regarding Defendant's unsolicited practices, and the fact that Alarm.com has been previously sued over its TCPA violations, are directly relevant to a determination of whether Alarm.com's TCPA violations in this action were "willful" or "knowing," entitling Plaintiff and putative class members to treble damages. *See Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 662 (4th Cir. 2019) (affirming $61 million TCPA judgment based on willful and knowing violations where, among other indices of the defendant's willful and knowing conduct, "The district court also noted the half-hearted way in which Dish responded to consumer complaints, finding that the 'evidence shows that Dish cared about stopping complaints, not about achieving TCPA compliance.'").   Accordingly, none of Plaintiff's allegations should be stricken from the Complaint, and Defendant's Motion to Strike should be denied.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court deny Defendant's Motion in its entirety.

Respectfully submitted,

Dated: July 16, 2020                    By:   */s/ Michael L. Sturm*
                                               Michael L. Sturm (VSB # 27533)
                                               Frank J. Sciremammano*
                                               **LATHROP GPM LLP**
                                               600 New Hampshire Ave, NW
                                               The Watergate, Suite 700
                                               Washington, DC 20037
                                               michael.sturm@lathropgpm.com

frank.sciremammano@lathropgpm.com
Tel.: (202) 295-2200
Fax: (202) 333-4186

Avi R. Kaufman*
**KAUFMAN P.A.**
400 NW 26th Street
Miami, Florida 33127
Tel: (305) 469-5881
kaufman@kaufmanpa.com

Robert Ahdoot*
**AHDOOT & WOLFSON, PC**
1016 Palm Ave.
West Hollywood, California 90069
Tel: (310) 474-9111
Fax: (310) 474-8585
rahdoot@ahdootwolfson.com

*Counsel for Plaintiff Craig Hicks
and all others similarly situated*

*\*Pro hac vice* motion forthcoming

21

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of July, 2020, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

/s/ Michael L. Sturm
Michael L. Sturm (VSB # 27533)
**LATHROP GPM LLP**
600 New Hampshire Ave, NW
The Watergate, Suite 700
Washington, DC 20037
michael.sturm@lathropgpm.com
Tel.: (202) 295-2200
Fax: (202) 333-4186