**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **CRAIG HICKS, individually and on behalf of all others similarly situated,**  )<br>)<br>)<br>**Plaintiff,**  )<br>)<br>**v.**  )<br>)<br>**ALARM.COM INC., a Delaware Corporation,**  )<br>)<br>)<br>**Defendant.**  ) | **Case No. 1:20-cv-00532-LO-MSN** |

**DEFENDANT ALARM.COM INCORPORATED'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND/OR
TO STRIKE IMPROPER ALLEGATIONS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I.      Plaintiff Has Not Pled Any Facts Supporting Direct TCPA Liability .............................. 2

      a.      Plaintiff Does Not Allege Alarm.com "Physically" Sent the Texts ...................... 3

      b.      Plaintiff Does Not Allege Alarm.com "Physically" Placed the Call ..................... 5

      c.      Plaintiff Fails to Distinguish Alarm.com's Direct Liability Authorities .............. 7

II.     Plaintiff Concedes Alarm.com's Vicarious TCPA Liability Arguments .......................... 9

III.    Plaintiff Has Not Pled Facts Supporting Prerecorded Voice or ATDS Use ................... 10

IV.     Plaintiff's Arguments Regarding His TCPA DNC Claim Are Unavailing .................... 13

V.      Plaintiff's Arguments Regarding His VTPPA Claim Are Likewise Unavailing............. 15

VI.     Plaintiff Has Not Met His Burden to Plead Article III Standing .................................... 19

VII.    Plaintiff Fails to Refute the Basis for Alarm.com's Alternative Motion to Strike .......... 20

CONCLUSION .................................................................................................................... 20

## TABLE OF AUTHORITIES
### (Continued)

Page

### CASES

*Aaronson v. CHW Grp., Inc.*,
2019 WL 8953349 (E.D. Va. Apr. 15, 2019) .............................................................. passim

*ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*,
917 F.3d 206 (4th Cir. 2019) ...................................................................................4

*Alvarez v. Lynch*,
828 F.3d 288 (4th Cir. 2016) ...................................................................9, 13, 15, 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................4, 6, 12

*Atkins v. City of Chicago*,
631 F.3d 823 (7th Cir. 2011) ...................................................................................7

*Bank v. Vivint Solar, Inc.*,
2019 WL 2280731 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted sub nom.*, 2019
WL 1306064 (Mar. 22, 2019).....................................................................................7

*Berner v. Mills*,
265 Va. 408, 579 S.E.2d 159 (2003)........................................................................16

*Boger v. Trinity Heating & Air*,
2018 WL 1851146 (D. Md. Apr. 18, 2018) .............................................................17

*Bradford v. HSBC Mortg. Corp.*,
280 F.R.D. 257 (E.D. Va. 2012) .............................................................................17

*Chamblee v. Old Dominion Sec. Co.*,
2014 WL 1415095 (E.D. Va. Apr. 11, 2014) ..............................................9, 15, 20

*Childress v. Liberty Mut. Ins. Co.*,
2018 WL 4684209 (D.N.M. Sept. 28, 2018) ........................................................8, 9

*Coleman v. Duke*,
867 F.3d 203 (D.C. Cir. 2017) ...............................................................................9

*Coleman v. Johnson*,
2014 WL 116150 (D.D.C. 2014) ...........................................................................9

*Craftwood Lumber Co. v. Horizon Glob. Corp.*,
2018 WL 6920394 (N.D. Ill. Apr. 12, 2018) .........................................................19

*Crespo v. Holder*,
631 F.3d 130 (4th Cir. 2011) ..................................................................................18

*Cunningham v. Politi*,
2019 WL 2519702 (E.D. Tex. Apr. 26, 2019), *report and rec. adopted*, 2019 WL
2526536 (June 19, 2019) .........................................................................................15

# TABLE OF AUTHORITIES
## (Continued)

Page

*Cunningham v. Rapid Capital Funding, LLC*,
  2017 WL 3776165 (M.D. Tenn. Aug. 31, 2017) ....................................................14

*Cunningham v. Rapid Capital Funding, LLC/RCF*,
  2017 WL 3574451 (M.D. Tenn. July 27, 2017).....................................................14

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
  637 F.3d 435 (4th Cir. 2011) ...............................................................................10

*Eastern Shore Markets, Inc. v. J.D. Assoc. Long Term Disability P'ship*,
  213 F.3d 175 (4th Cir. 2000) .................................................................................5

*Faheem-El v. Klincar*,
  600 F. Supp. 1029 (N.D. Ill. 1984) .......................................................................18

*Fogerty v. Fantasy, Inc.*,
  510 U.S. 517 (1994)..............................................................................................17

*Frank v. Cannabis & Glass, LLC*,
  2019 WL 4855378 (E.D. Wash. Oct. 1, 2019) ........................................................9

*Gulden v. Consol. World Travel Inc.*,
  2017 WL 3841491 (D. Ariz. Feb. 15, 2017)..........................................................10

*Harris v. McDonnell*,
  2013 WL 5720355 (W.D. Va. Oct. 18, 2013).........................................................18

*Hernandez v. Select Portfolio, Inc.*,
  2015 WL 3914741 (C.D. Cal. June 25, 2015) .........................................................7

*Hurley v. Messer*,
  2018 WL 4854082 (S.D.W. Va. Oct. 4, 2018).....................................................8, 12

*Hurt v. Bank of Am.*,
  2012 WL 12904236 (E.D. Va. July 11, 2012), *report and rec. adopted*, 2012 WL
  12904087 (Sept. 21, 2012), *aff'd sub nom.*, 511 F.App'x 256 (4th Cir. 2013)...........7

*Hyatt v. J.B. Hunt Transp. Servs., Inc.*,
  2015 WL 13648356 (W.D. Ark. June 16, 2015) ....................................................12

*In re Thiel*,
  2015 WL 773401 (W.D.N.C. Feb. 24, 2015), *aff'd*, 627 F.App'x 272 (4th Cir. 2016)...........6

*Johansen v. Vivant Inc.*,
  2012 WL 6590551 (N.D. Ill. Dec. 18, 2012) ....................................................11, 12

*Judge v. Quinn*,
  612 F.3d 537 (7th Cir. 2010) ..................................................................................9

*Keim v. ADF Midatlantic*,
  2015 WL 11713593 (S.D. Fla. Nov. 10, 2015).......................................................11

iv

## TABLE OF AUTHORITIES
### (Continued)

Page

*Lamie v. United States Tr.*,
  540 U.S. 526 (2004)...................................................................................................18

*Landgraf v. USI Film Prods.*,
  511 U.S. 244 (1994)...................................................................................................16

*Lee v. Loandepot.com, LLC*,
  2016 WL 4382786 (D. Kan. Aug. 17, 2016) ............................................................14

*Manopla v. Sansone Jr.'s 66 Automall*,
  2020 WL 1975834 (D.N.J. Jan. 10, 2020) ...............................................................13

*Masters v. Wells Fargo Bank S. Cent.*,
  2013 WL 3713492 (W.D. Tex. July 11, 2013) .........................................................17

*Mattson v. Quicken Loans Inc.*,
  2019 WL 7630856 (D. Or. Nov. 7, 2019) .................................................................15

*Melito v. Am. Eagle Outfitters, Inc.*,
  2015 WL 7736547 (S.D.N.Y. Nov. 30, 2015).........................................................5, 8

*Mims v. Arrow Financial Services*,
  132 S.Ct. 740 (2012)............................................................................................17, 18

*North Carolina ex rel. Cooper v. Tenn. Valley Auth.*,
  515 F.3d 344 (4th Cir. 2008) ....................................................................................18

*Pasco v. Protus IP Sols., Inc.*,
  826 F. Supp. 2d 825 (D. Md. 2011) ..........................................................................17

*Phillips v. Mozes, Inc.*,
  2015 WL 12806594 (N.D. Ala. Jan. 26, 2015)..........................................................15

*Randall v. U.S.*,
  30 F.3d 518 (4th Cir. 1994) .........................................................................................4

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*,
  713 F.3d 175 (4th Cir. 2013) ....................................................................................10

*Schwartz v. Wellin*,
  2014 WL 12637912 (D.S.C. Aug. 14, 2014).........................................................9, 13, 15, 20

*Scott v. 360 Mortgage Grp.*,
  2017 U.S. Dist. LEXIS 207513 (S.D. Fla. Dec. 14, 2017) ......................................11

*Sepehry-Fard v. Dep't Stores Nat'l Bank*,
  15 F. Supp. 3d 984 (N.D. Cal. 2014), *aff'd in part*, 670 F.App'x 573 (9th Cir. 2016) ..........13

*Sheski v. Shopify (USA) Inc.*,
  2020 WL 2474421 (N.D. Cal. May 13, 2020).................................................3, 5, 7

*Smith v. Royal Bahamas Cruise Line*,
  2016 WL 232425 (N.D. Ill. Jan. 20, 2016) ...............................................................11

v

## TABLE OF AUTHORITIES
### (Continued)

Page

*Smith v. State Farm Mut. Auto. Ins. Co.*,
  30 F. Supp. 3d 765 (N.D. Ill. 2014) ........................................................................7

*St. Louis Heart Ctr., Inc. v. Vein Centers For Excellence, Inc.*,
  2013 WL 6498245 (E.D. Mo. Dec. 11, 2013) ........................................................18

*Syed v. Mohammad*,
  2016 WL 8731783 (E.D. Va. Apr. 1, 2016) ............................................................4

*Taxpayers for the Animas-La Plata Referendum v. Animas-La Plata Water Conservancy Dist.*,
  739 F.2d 1472 (10th Cir. 1984) ............................................................................17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)...............................................................................................7

*Trumper v. GE Capital Retail Bank*,
  2014 WL 7652994 (D.N.J. July 7, 2014)...............................................................13

*U.S. ex rel. May v. Purdue Pharma L.P.*,
  737 F.3d 908 (4th Cir. 2013) ................................................................................16

*Ung v. Universal Acceptance Corp.*,
  198 F. Supp. 3d 1036 (D. Minn. 2016)..................................................................19

*Zeidl v. Nat'l Gas & Electric*,
  2019 WL 2161546 (N.D. Ill. May 17, 2019) ..........................................................11

## STATUTES

47 U.S.C. § 227(b) ...........................................................................................................15

47 U.S.C. § 227(b)(3) .......................................................................................................18

47 U.S.C. § 227(c) ..............................................................................................13, 14, 15

47 U.S.C. § 227(d) ...........................................................................................................15

VA Code Ann. § 1-238 ......................................................................................................16

VA Code Ann. § 59.1-515 ...........................................................................................16, 18

Va. Code Ann. § 59.1-515(A)...........................................................................................16

Va. Code Ann. § 59.1-515(C)...........................................................................................16

Va. Code Ann. § 59.1-518 ................................................................................................18

## OTHER AUTHORITIES

47 C.F.R. § 64.1200(c) .....................................................................................................14

47 C.F.R. § 64.1200(d)(3)................................................................................................15

47 C.F.R. § 64.1200(d)(4) ...............................................................................................14

## TABLE OF AUTHORITIES
### (Continued)

**Page**

22 Am. Jur. 2d Damages § 165 .................................................................................17

5A Wright & Miller, FED. PRAC. AND PROC. § 1357 (2d ed. 1990 & 1998 Supp.) ........................6

### RULES

Fed. R Civ. P. 8 ........................................................................................................12

Fed. R Civ. P. 12(b)(1) ..............................................................................................19

Fed. R Civ. P. 12(b)(6) ........................................................................................ passim

## INTRODUCTION

Plaintiff's Opposition (Dkt. 16, "Opposition" or "Opp.") to Alarm.com's Motion to Dismiss or Strike (Dkt. 11, "Motion"), like his Complaint (Dkt. 1, "Complaint" or "Compl."), still fails to connect Alarm.com to the two purported text messages or single phone call at issue in this case in any way. Alarm.com began its Motion by stating it does not sell its software or any hardware directly to end-user consumers, nor does it telemarket to anyone, much less allow anyone else to do so on its behalf and, thus, that it could not be either directly or vicariously liable for the alleged single call and two texts at issue in the Complaint. In his Opposition to the Motion, Plaintiff concedes he "has not alleged vicarious liability" in his Complaint. Moreover, Plaintiff does not argue, let alone allege, that Alarm.com *physically* sent him the two text messages or placed the one call at issue, as is plainly required to state a plausible claim for direct TCPA liability. These failings as to this threshold legal issue alone warrant dismissal of the entire Complaint.[1] Instead, Plaintiff doubles down on the speculative, conclusory, and inconsistent allegations in his Complaint in a futile attempt to hold Alarm.com liable under the TCPA and VTPPA for the alleged unlawful acts of third parties. Federal pleading standards and Article III require much more, and the Complaint is ripe for dismissal.

Indeed, beyond mostly just regurgitating or recasting the conclusory allegations from the Complaint, ignoring or mischaracterizing Alarm.com's cited authorities, and including several pages of irrelevant telecommunications history, Plaintiff's Opposition offers little argument and little to no relevant legal authority in opposing the Motion—and what little it does offer completely misses the mark. Tellingly, Plaintiff fails to cite a *single* case holding that conclusory allegations regarding TCPA liability and the purported use of a "prerecorded voice" or an ATDS like those contained in his Complaint here satisfy federal pleading standards. That is because no such cases exist.

---

[1] Plaintiff's VTPPA claim is based on the same conclusory allegations devoid of supporting facts as his TCPA claims and, thus, likewise fails and should be dismissed for the same reasons.

1

Beyond that, Plaintiff makes no attempt to distinguish or to even mention a single case among the many cited in support of Alarm.com's prerecorded voice, ATDS, or DNC arguments in the Motion, all of which show that the vast majority of federal courts have rejected TCPA complaints with similarly sparse and conclusory allegations for falling far short of satisfying federal pleading standards.  Plaintiff's arguments also rest squarely, if not entirely, on his assertion that the content of the one purported "prerecorded" phone call he received is "exactly the same in every respect" as others posted on the third party website cited in his Complaint.  Yet, not only is that assertion demonstrably false, but it sheds no light on the two text messages at issue (the contents of which are omitted from the Complaint and the Opposition), nor does it tie that call or the texts to Alarm.com.[2] Plaintiff spills even less ink in opposing Alarm.com's arguments as to why his analog VTPPA claim—which he admits arises from the same operative facts and seeks identical relief as his TCPA DNC claim—should not be dismissed as improperly duplicative of his TCPA claim.  Nor does Plaintiff explain how his complete failure to connect Alarm.com to the one call or two texts at issue here meets all three of the requisite elements for Article III standing, let alone why his superfluous "historical allegations" about Alarm.com, which are irrelevant to this case, should not be stricken.

All told, Plaintiff's Opposition utterly fails to refute the many well-supported grounds for relief presented by Alarm.com's Motion.  Consequently, the Court should grant the Motion.

## <u>ARGUMENT</u>

### I.    <u>Plaintiff Has Not Pled Any Facts Supporting Direct TCPA Liability.</u>

In a failed attempt to overcome Alarm.com's plain (and now unconverted) demonstration to the contrary in its Motion, Plaintiff's Opposition merely posits in conclusory fashion that "Plaintiff

---

[2] For Count I, Plaintiff alleges the call involved a "prerecorded voice" but does not claim it involved ATDS use.  For Count II, he alleges the text messages were sent using an ATDS.  Thus, whether the call at issue is the "same" as calls others received (and it is not) is irrelevant to Count II.

has plainly alleged that Alarm.com directly made the calls at issue" and seemingly asks the Court to imagine non-existent facts to support this implausible inference.  Opp. at 7.  However, such bald conclusions by Plaintiff, without any factual support, are insufficient to survive dismissal.  Plaintiff further concludes that he "has alleged that the first and *only* actual company identified in these [alleged] TCPA violative calls [*sic*] was Alarm.com."  *Id*. at 7-8 (emphasis in original).  Plaintiff is wrong, and neither Plaintiff's Complaint nor his Opposition connect Alarm.com to the one call or two texts at issue here.  As shown below, Plaintiff's failures on this point are multi-faceted:

a.  **Plaintiff Does Not Allege Alarm.com "Physically" Sent the Texts.**

As Alarm.com argued in its Motion, it is well accepted that direct TCPA liability applies only to those persons or entities who take the "steps necessary to ***physically*** place" a telephone call or send a text message.  Motion at 8 (quoting *Sheski*) (emphasis added).  This rule has been widely accepted by courts in the Fourth Circuit and elsewhere, including in this District.  *See, e.g., id*. at 7-10 (citing, *inter alia*, *Monitronics*, *Hurley* and *Aaronson*).  Thus, federal courts across the country have consistently dismissed threadbare TCPA complaints, like Plaintiff's, that fail to provide sufficient non-conclusory facts suggesting that the defendant physically placed or sent the calls or text messages at issue.  *Id*.  Such is particularly true here, and it alone dooms Plaintiff's Complaint.

Plaintiff's Opposition does not address this simple but fundamental legal maxim or show where such facts appear in the Complaint.  The reason why he does not do so is simple: no such facts were pled.  Instead, Plaintiff's direct liability argument focuses primarily (if not exclusively) on the one at-issue phone <u>call</u> and mostly just repeats the conclusory allegations from his Complaint.  *See* Opp. at 7-9.  Yet, as Alarm.com pointed out, Plaintiff provides no detail at all about the content of or circumstances surrounding the at-issue <u>text messages</u> he supposedly received from which the Court could remotely infer that Alarm.com took any steps to physically send them, as is required for direct TCPA liability.  *See* Motion at 9 & fn. 9.  Plaintiff's Opposition does nothing to refute this.

3

Indeed, Plaintiff posits that he "has plainly alleged that Alarm.com directly made the *calls* at issue. " Opp. at 7, emphasis added.  Not only does this not shed any light on the *texts* at issue but also the few paragraphs he cites from his pleading on this (*id.*, citing Compl. ¶ 8-9, 14-16) are likewise entirely conclusory and, tellingly, are not supported by any facts or case law.  *See* Compl. ¶ 8 ("Defendant is a company that provides home alarm services."); ¶ 9 ("To increase its sales, and as part of a general cold-call based marketing scheme, Defendant markets its services using pre-recorded voice calls and text messages to consumers."); ¶ 14 ("Defendant's telemarketing efforts include the use of auto dialers to send telemarketing text messages."); ¶ 15 ("Recipients of these text messages, including Plaintiff, did not consent to receive them."); ¶ 16 ("Defendant used this equipment because it allows for thousands of automated texts to be sent at one time.").  It is axiomatic that such bald allegations do not meet federal pleading standards.  *See, e.g., Syed v. Mohammad,* 2016 WL 8731783, at *1 (E.D. Va. Apr. 1, 2016) ("[L]egal conclusions unsupported by allegations of specific facts are insufficient to withstand" a Rule 12(b)(6) motion.) (citing *Randall v. U.S.*, 30 F.3d 518, 522 (4th Cir. 1994)).  And as Plaintiff points out in his brief (p. 6, quoting *ACA*), while the Fourth Circuit did reiterate that the federal "pleading standard does not require detailed factual allegations," that same opinion goes on to note that the standard "'demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation'" and that "[l]abels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement will not suffice." *ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*, 917 F.3d 206, 211 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  That is all that Plaintiff's Complaint does in this case.

That Plaintiff *does not even quote from* the at-issue text messages in his Complaint or Opposition—which would have been a simple task if they actually existed and/or supported his direct liability claims—is quite telling.  Apparently they do not.  Regardless, the fact remains that nothing

4

about the text messages at issue appears in the Complaint beyond Plaintiff's unsupported conclusions.[3]  This is plainly insufficient to plead a plausible direct TCPA liability claim.  *See, e.g., Melito v. Am. Eagle Outfitters, Inc*., 2015 WL 7736547, at *4 (S.D.N.Y. Nov. 30, 2015) (holding that merely alleging defendant "caused texts to be sent" insufficient to adequately allege defendant "actually sent any texts" for direct TCPA liability); *Sheski v. Shopify (USA) Inc.,* 2020 WL 2474421, at *3 (N.D. Cal. May 13, 2020) (no direct TCPA liability where the facts alleged "d[id] not lead to an inference that [defendant] … controlled the content of and sent the [text] message" at issue).

### b.  Plaintiff Does Not Allege Alarm.com "Physically" Placed the Call.

Plaintiff's direct liability (and other) arguments regarding the one purported "prerecorded" phone call fare no better.  Once again, Plaintiff does not even address (let alone allege) that Alarm.com *physically* placed the 954 call—the only alleged violative call—or show where such facts appear in the Complaint, as he must to state a claim for direct TCPA liability.  Instead, Plaintiff's only allegation to support his argument that Alarm.com is directly liable is that "when the [844] phone number identified in the [alleged] prerecorded voice message [made from the 954 number] was called back, the agent identified as [*sic*] 'Alarm.com.'" Opp. at 7-8.  However, this allegation does not support a plausible inference that Alarm.com physically placed the 954 call.

As an initial matter, it makes no sense that, if Alarm.com physically made the call with the 954 number and left the 844 number to call back, it would *identify itself in the message* as "Mark from Home Security Promotions" and only identify itself as Alarm.com when someone calls back.  Under Rule 12(b)(6), courts need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments" when ruling on the Motion at bar.  *Eastern Shore Markets, Inc. v. J.D.*

---

[3] As discussed in the Motion (*see* p. 9), Plaintiff alleges at best that the texts and call originated from the same 954 number, but he provides no details about the substance of the two texts whatsoever, much less any indication that the 954 number from which they purportedly originated belonged to *Alarm.com* or that *Alarm.com's* products or services were offered in the texts.

*Assoc. Long Term Disability P'ship,* 213 F.3d 175, 180 (4th Cir. 2000) (citing 5A Wright & Miller, FED. PRAC. AND PROC. § 1357 (2d ed. 1990 & 1998 Supp.).  This Court should rule similarly here.

Even assuming *arguendo* that this allegation is true, it does not suggest in any way that the only call at issue—from the 954 number—was physically placed by Alarm.com, particularly as there is nothing in the Complaint indicating Alarm.com owned or was associated with the 954 number or took any "steps to physically place" that call, as Alarm.com has demonstrated.  *See* Motion at 9-10 & fn. 8-9.  In fact, Plaintiff concedes in his brief that the purported "voice message" he received from "Mark" with "Home Security Promotions" did not identify (or even say) "Alarm.com" or offer any Alarm.com products or services.  *See* Opp. 7 (citing Compl. ¶ 17); *see also* Dkt. 14 (recording alleged of call, cited in Complaint as Exhibit 1).  Instead, Plaintiff merely concludes in his pleading "*[o]n information and belief*, Defendant, or a third-party acting on its behalf, made unsolicited, pre-recorded voice calls and sent unsolicited, autodialed text messages."  Compl. ¶ 21 (emphasis added); *see also id.* ¶¶ 33, 37 (referring to "agents" making "unsolicited calls" without supporting facts).  Such allegations are likewise insufficient to satisfy federal pleading standards and survive dismissal.  *See In re Thiel*, 2015 WL 773401, at *4, n.4 (W.D.N.C. Feb. 24, 2015), *aff'd*, 627 F.App'x 272 (4th Cir. 2016) (holding that "'information and belief' allegations [like Plaintiff's] should be disregarded in an *Iqbal* analysis, much as [any other] conclusory allegations must be" under Rule 12(b)(6)).

Further, Plaintiff's assertion that "the first and *only* actual company identified in these TCPA violative calls was Alarm.com" (Opp. at 7-8, emphasis in original) is demonstrably false.  For one thing, the only company identified in the alleged prerecorded message at issue is "Home Security Promotions" and not Alarm.com.  *See* Dkt. 14.  For another, Plaintiff's argument is belied by one of the websites he cites in his Complaint and upon which he relies for his flawed "prerecorded voice"

argument in his Opposition, which does not identify Alarm.com either.[4]  *See* Compl. ¶ 19 (citing https://directory.youmail.com/directory/phone/9545079334 (last accessed July 22, 2020)); *see also* Declaration of A. Paul Heeringa ("Heeringa Decl."), filed herewith, at ¶ 4 and Exhibit ("Ex.") A thereto (screenshot of website cited as "Exhibit 1" in the Complaint).[5]  These contradictions further underscore Plaintiff's utter failure to plead a plausible direct TCPA liability claim against Alarm.com here.  *See also Hernandez v. Select Portfolio, Inc.,* 2015 WL 3914741, at *10 (C.D. Cal. June 25, 2015) ("Contradictory allegations … are inherently implausible" and thus insufficient to withstand dismissal under Rule 12(b)(6).); *Hurt v. Bank of Am.*, 2012 WL 12904236, at *3 (E.D. Va. July 11, 2012), *report and rec. adopted*, 2012 WL 12904087 (Sept. 21, 2012), *aff'd sub nom.,* 511 F.App'x 256 (4th Cir. 2013) ("a plaintiff 'can plead himself out of court by pleading facts that show that he has no legal claim'") (quoting *Atkins v. City of Chicago,* 631 F.3d 823, 832 (7th Cir. 2011)).

### c.  Plaintiff Fails to Distinguish Alarm.com's Direct Liability Authorities.

Plaintiff's attempt to distinguish a handful of the many directly on-point authorities cited by Alarm.com (*see* Opp. at 8-9, discussing *Shopify*, *Monitronics*, *Vessal*, *Aaronson*, and *Hurley*) is unavailing for several reasons.  Each case Alarm.com cited represents an instance where, as here, a

---

[4] In his Complaint and Opposition, Plaintiff does not capitalize "home security promotion" and incorrectly uses the singular "promotion" rather than "promotions" as stated by "Mark" on the recording Plaintiff submitted (*see* Dkt 14), presumably to suggest that entity is not an "actual company."  Regardless, as Alarm.com noted in its Motion, it is well accepted that an alleged "seller generally does not 'initiate' calls [within the meaning of the TCPA for direct liability purposes] placed by [alleged] third-party telemarketers."  Motion at 9-10 (quoting *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 771 (N.D. Ill. 2014)).  *See also id.* at 10 (citing *Wick v. Twilio*).  Thus, even assuming *arguendo* that someone at the other end "identifies the company as Alarm.com" if the 844 number in the message is called, that conclusory allegation alone does not allow for a plausible inference that Alarm.com itself physically placed the initial call or texts from the 954 number.  *See, e.g., Bank v. Vivint Solar, Inc.,* 2019 WL 2280731, at *3-6 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted sub nom.,* 2019 WL 1306064 (Mar. 22, 2019) (dismissing, notwithstanding allegation that defendant called plaintiff 30 minutes after the allegedly violative call, where plaintiff provided no detail about the alleged initial prerecorded call, holding the follow up call was "an insufficient basis upon which to infer that [defendant] made the specific Prerecorded Call" at issue).

[5] The Court may properly consider this exhibit under Rule 12(b)(6), as it is incorporated by reference in the Complaint.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).

plaintiff did not plead sufficient (or, like Plaintiff, any) facts suggesting the defendant(s) took any "steps to physically place" the calls or texts at issue, as is required to plead direct TCPA liability. *See* Motion at 7-10. Such is true here, as further discussed above. Plus, in *Aaronson*, the plaintiff did more than merely allege that the "defendants engaged in telemarketing" as Plaintiff argues. Opp. at 9. Instead, Judge Ellis dismissed, in part, "because [the] plaintiff's allegations d[id] not show plausibly that defendant actually, physically initiated the telephone calls at issue," despite a "specific" (albeit conclusory) allegation that one of the at-issue calls originated from "one of the Defendant's many telephone numbers." *Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019). Similarly, in *Hurley v. Messer,* the court found there were "simply no facts [alleged] suggesting that Defendant Fiverr physically placed the [alleged prerecorded] calls at issue" for direct TCPA liability, even though the plaintiff pled that the defendant "did the voiceovers for the subject [prerecorded] messages." 2018 WL 4854082, at *3 (S.D.W. Va. Oct. 4, 2018).

Yet, Plaintiff ignores the *Childress* case (*see* Motion at 10), where the plaintiff "assert[ed] in an entirely conclusory fashion that 'Jason' [the name in the message] was a 'fake name' and that the call was [actually] made by 'Defendant's pre-recorded message robot machine'" which the court found insufficient for direct TCPA liability. *Childress v. Liberty Mut. Ins. Co.,* 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018). Plaintiff likewise ignores *Melito* (*see* Motion at 8), which Judge Ellis cited with approval in *Aaronson*,[6] where the court held that (i) "[c]onclusory assertions [the defendant] sent or caused the text message to be sent is simply a legal conclusion devoid of further factual enhancement" and (ii) "[b]ecause [p]laintiffs d[id] not plead [that the defendant 'made,' i.e., physically placed or actually sent, the [at issue] text messages, the [complaint] fail[ed] to state a claim." 2015 WL 7736547, at *4. That is all Plaintiff has done here and he does not show otherwise.

---

[6] *See* 2019 WL 8953349, at *3.

In sum, "[m]erely alleging that [Alarm.com] 'made' or 'initiated' [a] call" like Plaintiff has done here "is not sufficient to allege a [direct] TCPA [liability] claim." *Frank v. Cannabis & Glass, LLC*, 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019).  Tellingly, Plaintiff fails to cite a single case in support of his direct TCPA liability argument in his Opposition, let alone one holding that conclusory allegations like those in his Complaint sufficiently state a claim for relief.  *See also Schwartz v. Wellin*, 2014 WL 12637912, at *3 (D.S.C. Aug. 14, 2014) ("'It is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel, and ... perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.'") (quoting *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010)).  Therefore, the Complaint should be dismissed pursuant to Rule 12(b)(6) for this reason.

## II.    Plaintiff Concedes Alarm.com's Vicarious TCPA Liability Arguments.

Plaintiff's Opposition concedes (as it must) that "Plaintiff has not [adequately] alleged vicarious liability" and does not address Alarm.com's arguments or authorities on this point.  Opp. at 9.[7]  Thus, Plaintiff has conceded this issue.  *See Schwartz, supra*; *see also Alvarez v. Lynch*, 828 F.3d 288, 295 (4th Cir. 2016) (ignoring an opponent's argument is "an outright failure to join in the adversarial process [that] ordinarily result[s] in waiver"); *Chamblee v. Old Dominion Sec. Co.*, 2014 WL 1415095, at *8 (E.D. Va. Apr. 11, 2014) ("[W]hen a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (*quoting Coleman v. Johnson*, 2014 WL 116150, at *4 (D.D.C. 2014), *rev'd in part on other grounds sub nom. by Coleman v. Duke*, 867 F.3d 203 (D.C. Cir. 2017)).  And because Plaintiff fails to plead sufficient (or any) facts supporting direct TCPA liability as stated above, all of his TCPA claims (*i.e.*, Counts I through III of the Complaint)

---

[7] Plaintiff cites to *Childress* here, suggesting he need not allege vicarious TCPA liability "because it is a separate theory of liability."  *Id.*  But nothing in *Childress* stands for that proposition.

should be dismissed under Rule 12(b)(6) for this reason alone.  *See Gulden v. Consol. World Travel Inc.,* 2017 WL 3841491, at *3 (D. Ariz. Feb. 15, 2017) ("Because identity is a necessary element of all of Plaintiff's [TCPA] claims, this deficiency warrants dismissal of all of Plaintiff's claims.").

### III.   Plaintiff Has Not Pled Facts Supporting Prerecorded Voice or ATDS Use.

Plaintiff unilaterally declares that he "sufficiently alleges receiving prerecorded and autodialed calls from Alarm.com because Plaintiff alleges the facts and circumstances surrounding the calls that support such an inference."  Opp. at 2.  Plaintiff also boldly declares that his "Complaint alleges at least five different facts supporting the conclusion at this stage of the litigation that Alarm.com used an autodialer to make unsolicited calls."  *Id.* at 11.[8]  These fail on several levels:

**First**, Plaintiff's Opposition repeatedly refers to a "call" or "calls" being made with an ATDS; but Plaintiff does not allege in his Complaint that the one call at issue was made using an ATDS, only the two purported text messages.[9]  As to those allegations, Plaintiff does not plead any "circumstances surrounding" the at-issue text messages in his Complaint from which it could be remotely inferred that they were sent using an ATDS, let alone "five different facts" supporting his conclusory ATDS allegations.  Instead, the entirety of Plaintiff's "factual" allegations in his Complaint about the two text messages he purportedly received amounts to a single paragraph in which he provides zero detail about them (*see* Compl. ¶ 13); and the only other allegations in the

---

[8] The "five different facts" Plaintiff alludes to are that "(1) the *call* was commercial and generic in nature, (2) it was made without Plaintiff's consent, (3) Defendant used the same number to send the text messages and make the prerecorded call to Plaintiff, (4) Defendant identified itself in a subsequent *call*, and (5) that other consumers received similar telemarketing *calls* under similar circumstances."  Opp. at 11.  Again, Plaintiff does not allege the *call* in this case involved an ATDS.

[9] As to Count I, Plaintiff alleges that the call was prerecorded, not that it was sent using an ATDS.  As to Count II, he alleges that the texts were sent using an ATDS.  *See* Compl. ¶¶ 9, 14, 24, 32-39.  While Plaintiff's Opposition seemingly suggests the call was also made using an ATDS, this is not alleged in his Complaint and "[i]t is well-established that parties cannot amend their complaints through briefing or oral advocacy."  *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC,* 713 F.3d 175, 184 (4th Cir. 2013); *see also E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 449 (4th Cir. 2011) ("[S]tatements by counsel that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion.").

Complaint remotely relevant to the texts and ATDS usage are entirely conclusory (*id.*, ¶¶ 14 & 16). Moreover, none of the "facts" on Plaintiff's list of five in his brief are suggestive of ATDS usage as to the two text messages at issue, and Plaintiff cites no cases holding otherwise.[10] Nevertheless, it is well accepted that "merely alleging, in a conclusory fashion, that defendant used an ATDS or parroting the statutory definition of an ATDS to describe the equipment used [which is all Plaintiff does] is insufficient to show plausibly that the telephone calls [or, here, texts] were made to plaintiff's cellular phone via an ATDS." *Aaronson*, 2019 WL 8953349, at *4. *See also* Motion at 15-16 (citing *Thomas-Lawson*, *Snow*, *Sprye*, *Worsham*, and *Clayton*). Plaintiff does not address or refute these authorities in his ATDS argument. Thus, Count II should be dismissed for this additional reason.

**Second**, the few authorities that Plaintiff relies on for his ATDS argument (*see* Opp. at 10-11) are all readily distinguishable and inapposite, as they each involved "multiple" or "numerous" calls or text messages—the ***specific contents*** of which were alleged—made to the same plaintiff, along with other specifically alleged facts those courts found to be indicative of ATDS use (e.g., "spoofed" numbers, and "dead air" at the beginning of a phone call), none of which Plaintiff alleges in this case regarding the two at-issue text messages. *See, e.g., Keim v. ADF Midatlantic*, 2015 WL 11713593, at *4 (S.D. Fla. Nov. 10, 2015); *Smith v. Royal Bahamas Cruise Line*, 2016 WL 232425, at *1, 4 (N.D. Ill. Jan. 20, 2016); *Zeidl v. Nat'l Gas & Electric*, 2019 WL 2161546, at *1, 3 (N.D. Ill. May 17, 2019); *Scott v. 360 Mortgage Grp.*, 2017 U.S. Dist. LEXIS 207513, at *17 (S.D. Fla. Dec. 14, 2017). Further, the district court actually dismissed the complaint in *Johansen v. Vivant Inc.*, which Plaintiff quotes in his brief, ignoring that the holding in that case requires him "to describe the [text] messages he received in laymen's terms or provide the circumstances surrounding

---

[10] Indeed, the first and last "facts" on Plaintiff's list of five in his Opposition are merely conclusions in his Complaint as to why "Plaintiff believes the [alleged] April 9, 2020 *call used a prerecorded voice*." Compl. ¶ 19 (emphasis added). This says nothing about the text messages.

them to establish his belief that the messages were … delivered via the ATDS." 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012).  As noted above, no such allegations are included in the Complaint regarding the text messages at issue in this case and, thus, *Johansen* further supports dismissal.

**Third**, Plaintiff's suggestion that he "should be permitted to proceed in discovery regarding the dialing system used" to plead a plausible TCPA (or any) claim (Opp. at 2-3) is contrary to well-settled law and should be rejected as out of hand.  As one judge aptly noted in a TCPA case:

> As master of his Complaint, it is [Plaintiff]'s burden to state the facts within his knowledge that, taken as true, constitute a violation or violations of law. [Plaintiff] possesses knowledge as to each and every [text message] he [allegedly] received from [Defendant] and is perfectly capable of pleading facts to indicate … that those calls violated the TCPA. As [he] failed to plead these facts, his Complaint must be dismissed pursuant to Rule 12(b)(6).

*Hyatt v. J.B. Hunt Transp. Servs., Inc.*, 2015 WL 13648356, at *2 (W.D. Ark. June 16, 2015).  Put differently by a Fourth Circuit judge in a TCPA case, "allowing discovery where Plaintiff has failed to allege a plausible claim would be directly contrary to the mandates of *Iqbal* and *Twombly*." *Hurley*, 2018 WL 4854082, at *4; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").

**Fourth**, Plaintiff fails to refute the significant fact that none of the messages on the third-party website cited in Plaintiff's Complaint mentions Alarm.com at all.   Rather, Plaintiff's prerecorded voice argument rests solely on his conclusion that "at least one of the recordings on the [third party] website [cited in his Complaint] is ***exactly the same*** in every respect as the one he [allegedly] received."  Opp. at 10 (emphasis in original).  As the Court will see (or rather will hear), however, **none** of the recordings on that website are "exactly the same in every respect" as the message Plaintiff allegedly received.  *See* Heeringa Decl., ¶ 4 and Ex. A.  Thus, it is just as plausible, if not probable, that the callers were leaving live voicemails reading from a script, rather than "prerecorded" messages, and whether the voice messages were "generic" is irrelevant to whether

they were prerecorded.  In short, because Plaintiff had not pled "factual allegations suggesting that the voice on the other end of the line was [actually] prerecorded" and does not allege the phone call was placed using an ATDS, Count I of the Complaint should be dismissed for this additional reason. Motion at 14 (quoting *Trumper v. GE Capital Retail Bank*, 2014 WL 7652994, at *2 (D.N.J. July 7, 2014); *see also Aaronson*, 2019 WL 8953349, at *3 (quoting *Trumper*); *Sepehry-Fard v. Dep't Stores Nat'l Bank*, 15 F. Supp. 3d 984, 987 (N.D. Cal. 2014), *aff'd in part*, 670 F.App'x 573 (9th Cir. 2016) (dismissing where plaintiff pled no facts that the calls at issue "were placed using a prerecorded voice in alleged violation of the TCPA"); *Manopla v. Sansone Jr.'s 66 Automall,* 2020 WL 1975834, at *2 (D.N.J. Jan. 10, 2020) ("Plaintiff merely proffers the content of the message and conclusory alleges that Defendant utilized a pre-recorded message. Such bare-bones, conclusory allegations are insufficient to survive a motion to dismiss.") (citing *Trumper*).

**Finally**, Plaintiff's Opposition also fails to support Plaintiff's prerecorded voice arguments with any legal authorities of his own and, instead, it merely repeats or recasts the same conclusory allegations from the Complaint.  *See* Opp. at 9-10.  Nor does Plaintiff refute any of Alarm.com's cited authorities regarding prerecorded voice or ATDS use (*see* Motion at 14-16); and, as demonstrated above, his ATDS authorities are readily distinguishable.  The Court should reject Plaintiff's facially deficient arguments on these issues and dismiss.  *See Schwartz* and *Alvarez, supra.*

## IV.    **Plaintiff's Arguments Regarding His TCPA DNC Claim Are Unavailing.**

Plaintiff dedicates a significant portion of his Opposition to irrelevant telecommunications history in a misguided attempt to support his "DNC" rule violation claim under Section 227(c) of the TCPA in Count III.  *See* Opp. at 12-15.  Plaintiff misses the mark on this issue, as well.

Indeed, as Alarm.com demonstrated in its opening brief, Plaintiff must also plausibly allege facts suggesting that Alarm.com "physically placed" or sent the at issue call or text messages to state

a claim for direct liability under Section 227(c) and avoid dismissal under Rule 12(b)(6).  *See* Motion at 8, 17 (citing *Donaca, Meilleur, Jung*).  Because Plaintiff failed to allege that Alarm.com physically placed the call or text messages, concedes that there is no vicarious liability, and cites no authority disputing this pleading requirement either, Count III should also be dismissed.

Additionally, while Plaintiff spills much ink arguing that "[c]ellular telephones can be used for residential purposes" (Opp. at 14), he misses the point.  Under Section 227(c), Plaintiff "must establish that his cellular number is used for residential purposes."  *Lee v. Loandepot.com, LLC*, 2016 WL 4382786, at *6 (D. Kan. Aug. 17, 2016).  Consequently, federal courts have dismissed Section 227(c) claims at the pleadings stage where, as here, the complaint does not allege facts suggesting that the plaintiff fits the definition of a "residential telephone subscriber"—*i.e.,* that his or her cell phone is used for "residential purposes."  *See, e.g., Cunningham v. Rapid Capital Funding, LLC/RCF*, 2017 WL 3574451, at *3 (M.D. Tenn. July 27, 2017), *report and rec. adopted sub nom. Cunningham v. Rapid Capital Funding, LLC*, 2017 WL 3776165 (M.D. Tenn. Aug. 31, 2017) ("As Plaintiff has not alleged facts showing his cell phones are used for residential purposes, he fails to state a claim under 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c) and (d)(4).").  In this regard, not only does Plaintiff ignore (and thus concede) Alarm.com's argument and authority on this issue (*see* Motion at 18), but his Complaint merely alleges that his "telephone number is not associated with a business and is for personal use" (Compl. ¶ 12); and he does not allege in his Complaint or (quite tellingly) argue in his Opposition that his cell phone is used for "residential purposes."

Moreover, the few relevant cases cited by Plaintiff on this point (*see* Opp. at 14-15) are distinguishable and inapposite.  For example, in *Hodgin*, the defendants apparently argued that <u>all</u> cell phones, regardless of use, are not allowed on the National DNC Registry.  In *Dish Network*, the court ruled on a motion to exclude expert testimony, and not whether the allegations in the complaint

were sufficient for a DNC claim or whether a call to a cell phone not used for "residential purposes" violates the TCPA's National DNC Registry provision.  The district judge in *Phillips* apparently only agreed with the magistrate's order to the extent there were insufficient facts alleged to determine whether there was an established business relationship, which is an exception to the TCPA's National DNC Registry rules, not whether all calls to any cell phone may result in a § 227(c) violation.  *See Phillips v. Mozes, Inc.,* 2015 WL 12806594, at *1 (N.D. Ala. Jan. 26, 2015).  In *Sussino*, the Third Circuit did not rule on National DNC Registry provision (§ 227(c)) but on the ATDS provision (§ 227(b)).  In short, whether a cell phone *can* be registered on the National DNC Registry does not mean *all* of them *should* be, let alone that Plaintiff's pled allegations in this regard are sufficient under Rule 12(b)(6).  *Cf. Mattson v. Quicken Loans Inc.,* 2019 WL 7630856, at *4 (D. Or. Nov. 7, 2019) ("[T]he national do-not-call rules do not prohibit calls to business numbers.").

Lastly, despite referring to them in his Complaint (*see* ¶ 42), Plaintiff's Opposition posits that he "does not bring a claim under 47 C.F.R. § 64.1200(d)(3)"—*i.e.,* the "internal" DNC rules promulgated under the "technical and procedural standards" in Section 227(d) of the TCPA—and thus Plaintiff has conceded this issue as well.  *See Schwartz, Alvarez,* and *Chamblee, supra.*

### V.   Plaintiff's Arguments Regarding His VTPPA Claim Are Likewise Unavailing.

Plaintiff's arguments in support of his duplicative VTPPA claim in Count IV (*see* Opp. at 16-18) fare no better than his TCPA arguments.  Again, Plaintiff fails on this front on several levels:

For starters, Plaintiff concedes that his VTPPA claim is based on the "same [alleged] conduct" as his TCPA claim.  Opp. at 17.  Thus, since Plaintiff fails to plead sufficient (nor any) facts connecting Alarm.com to the at-issue call or text messages in support of his underlying TCPA claim, his VTPPA claim naturally fails.  *See, e.g.*, *Cunningham v. Politi*, 2019 WL 2519702, at *7 (E.D. Tex. Apr. 26, 2019), *report and rec. adopted*, 2019 WL 2526536 (June 19, 2019) ("Because

15

Plaintiff's underlying (federal) TCPA claims fail, Plaintiff's state TCPA claim … also fails.").

Additionally, Plaintiff notes that the VTPPA provides for "'damages in the amount of $500 for a first violation, $1,000 for a second violation, and $5,000 for each subsequent violation, as opposed to his TCPA DNC provision claim, which does not provide for attorneys' fees and provides for up to $500 per violation in the absence of trebling." Opp. at 17 (citing Va. Code Ann. §§ 59.1-515(A) & (C)). Yet, Plaintiff omits that, at the time of the alleged violation in this case, available statutory damages under the TCPA and VTPPA were identical (*i.e.*, $500 per violation, trebled to $1500 for a "willful violation"); and it was only <u>after</u> he filed his Complaint that VTPPA statutory damages were increased, effective July 1, 2020. *See* Heeringa Decl., ¶ 5 & Ex. B thereto (text of § 59.1-515 in effect). Regardless, there is nothing in the recent VTPPA amendments suggesting they are to be applied retroactively, and Plaintiff does not (and indeed cannot) argue otherwise. *See Berner v. Mills*, 265 Va. 408, 413, 579 S.E.2d 159, 161 (2003) (noting that (i) "the fundamental principle[] of statutory construction" is that "retroactive laws are not favored, and that a statute is always construed to operate prospectively unless a contrary legislative intent is manifest" and (ii) under Virginia law, changes to a "reenacted" statute like the VTPPA "are effective prospectively unless the bill expressly provides that such changes are effective retroactively on a specified date") (citing, *inter alia*, VA Code Ann. § 1-238). *See also U.S. ex rel. May v. Purdue Pharma L.P.,* 737 F.3d 908, 915 (4th Cir. 2013) ("[T]he principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.") (quoting *Landgraf v. USI Film Prods.,* 511 U.S. 244, 265 (1994)). That Plaintiff can only recover the same damages for the same alleged injury as his TCPA DNC claim under the version of the VTPPA in effect in this case thus further supports dismissal of his VTPPA claim under Rule 12(b)(6). *See* Motion at 20 (citing *Yor-Wic Constr. Co.*). Again, Plaintiff cites no authority to the contrary.

Further, while Plaintiff notes that the VTPPA still provides for attorneys' fees and costs while the TCPA does not, Plaintiff ignores and does not refute the authority cited by Alarm.com in this regard holding that "[s]uch expenses are generally not considered 'damages' because they are not the legitimate consequence of the tort … sued upon."  Motion at 21, n. 16 (quoting *Taxpayers for the Animas-La Plata Referendum v. Animas-La Plata Water Conservancy Dist.*, 739 F.2d 1472, 1480 (10th Cir. 1984) (citing 22 Am. Jur. 2d Damages § 165)).  This Court, applying Supreme Court precedent, has ruled similarly.  *See, e.g., Bradford v. HSBC Mortg. Corp.,* 280 F.R.D. 257, 262 (E.D. Va. 2012)  (quoting *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 533 (1994)).  Nevertheless, while Plaintiff relies heavily on the District of Maryland's post-*Mims* decision in *Boger v. Trinity Heating & Air* on this point (*see* Opp. at 17), the court in that case noted several key differences between the Maryland analog statute and the TCPA beyond the recovery of fees impacting its decision there, including that the Maryland statute did not allow corporate claims or for the recovery of treble damages, which are not an issue under the effective version of the VTPPA in this case.  *See* 2018 WL 1851146, at *3 (D. Md. Apr. 18, 2018).  And even then, the *Boger* court noted that "[a]t least one judge in th[at] District has expressed doubts that plaintiffs may recover statutory damages under both the TCPA and MTCPA for the same violations."  *Id.* (citing *Pasco v. Protus IP Sols., Inc.,* 826 F. Supp. 2d 825, 846 (D. Md. 2011)).  Thus, Plaintiff's reliance on *Boger* is misplaced.

Moreover, the other cases Plaintiff cites in support of his VTPPA argument (*Zhu* and *Charvat*, decided in 2011) both predate *Mims v. Arrow Financial Services,* "in which the United States Supreme Court held federal and state courts enjoy concurrent jurisdiction over TCPA claims." *Masters v. Wells Fargo Bank S. Cent.*, 2013 WL 3713492, at *3 (W.D. Tex. July 11, 2013) (citing 132 S.Ct. 740, 747 (2012)).  Like the court held in *Masters*, which involved a substantially similar analog statute as is at issue here, there is nothing in the TCPA or in the VTPPA suggesting that

"either legislative body intended to allow double recovery under both state and federal law for the same TCPA violations" and instead "plaintiffs have a choice of forum rather than two separate avenues for recovery." *Id.* Plaintiff does not argue or demonstrate otherwise in his Opposition.[11]

Lastly, Plaintiff's reliance on *St. Louis Heart Ctr., Inc. v. Vein Centers For Excellence, Inc.,* 2013 WL 6498245 (E.D. Mo. Dec. 11, 2013) is also misplaced. There, the defendant argued that "by creating an avenue for a *state official* to bring a TCPA claim on behalf of a group of citizens, Congress intended to preclude private class actions." *Id.* at *3 (emphasis added). However, the TCPA's statutory damages provision the defendant challenged  (47 U.S.C. § 227(b)(3)) does not, on its face, purport to be limited to an "***individual action*** for damages" like its VTPPA counterpart. *See* VA Code Ann. § 59.1-515 (emphasis added). There is also a fundamental legal distinction between an "individual" action and a "class" action. *See, e.g., Faheem-El v. Klincar,* 600 F. Supp. 1029, 1036 (N.D. Ill. 1984) (noting "there are significant differences between an individual action … and a class action"); *Harris v. McDonnell*, 2013 WL 5720355, at *4 (W.D. Va. Oct. 18, 2013) (noting "courts have considered the difference between class-action and individual lawsuits to be material in determining if the first-to-file rule should be applied"). In short, the "limiting language" that Plaintiff seeks (Opp. at 18) is in the title of the very statutory provision that he seeks to invoke.[12]

---

[11] At best, Plaintiff notes that, "[b]y its own express terms, the VTPPA is not to 'be construed to limit any remedies, causes of action or penalties available to any person or governmental agency under any other federal or state law.'" Opp. at 16 (quoting Va. Code Ann. § 59.1-518). All this provision means is that the VTPPA is not an exclusive remedy for National DNC Registry violations, which is consistent with the Supreme Court's holding in *Mims*, but it does not mean that the ***same*** recovery under the VTPPA and TCPA for the ***same*** alleged injury is allowed. This is confirmed by the *Virginia ex rel. Jagdmann* case cited in Alarm.com's Motion (*see* p. 20, fn. 15), in which the "Commonwealth [was] not seeking damages under the VTPPA [*i.e.*, the same provisions at issue in the present case], as each of the violations is covered by the TCPA."

[12] In this regard, "'[i]t is well established that when the statute's language is plain, the sole function of the courts-at least where the disposition required by the text is not absurd-is to enforce it according to its terms.' [] In interpreting the plain language of a statute, we give the terms their 'ordinary, contemporary, common meaning….'" *Crespo v. Holder,* 631 F.3d 130, 133 (4th Cir. 2011) (quoting *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004) and *North Carolina ex rel. Cooper v. Tenn. Valley Auth.,* 515 F.3d 344, 351 (4th Cir. 2008)) (internal citations omitted).

## VI.   Plaintiff Has Not Met His Burden to Plead Article III Standing.

Plaintiff's argument that he has Article III standing is also unavailing.  Relying exclusively on the District of Minnesota's opinion in *Ung v. Universal Acceptance Corp.*, 198 F. Supp. 3d 1036 (D. Minn. 2016), Plaintiff argues that he "it is clear that Defendant's violations of the TCPA are traceable to its conduct, and that the violations are redressable by statutory damages." Opp. at 19. However, *Ung* is inapposite because there, unlike here, "[i]t [was] readily apparent that the ***only*** harm alleged in th[at] case resulted from [Defendant]'s conduct, and not from the actions of any third parties." 198 F. Supp. 3d at 1040 (emphasis in original).  In stark contrast to *Ung*, Plaintiff here has not pled any facts from which it could be inferred, for example, it was Alarm.com that physically placed the call/texts at issue as opposed to some third-party (*e.g.,* "Mark" with "Home Security Promotions").  In this regard, federal courts have consistently dismissed TCPA claims under Rule 12(b)(1) where, as here, the plaintiff does not plead sufficient facts connecting the defendant to the calls or the parties that made the calls.  *See* Motion at 21 (citing *Barker* and *Friedman*).  *See also Craftwood Lumber Co. v. Horizon Glob. Corp.*, 2018 WL 6920394, at *3 (N.D. Ill. Apr. 12, 2018) (same).  This Court should rule similarly here and also dismiss the Complaint under Rule 12(b)(1).

Plaintiff also relies solely on *Ung* to argue that his "alleged injuries are easily redressable" because the TCPA provides for statutory damages.  Opp.  at 14.  Plaintiff entirely misses the point. As noted above, the court in *Ung* found that the only harm alleged in that case resulted from the defendant's conduct and not some third party.  Here, the circumstances are different, and imposing statutory or other damages on Alarm.com or enjoining Alarm.com as Plaintiff asks because of the alleged acts of unidentified third parties will not prevent those or other third parties from calling him in the future.  Therefore, *Ung* is distinguishable and the Court should also dismiss the Complaint pursuant to Rule 12(b)(1) for this additional reason.  And because Plaintiff's Opposition does not

bother to address Alarm.com's request that the Complaint be dismissed with prejudice (*see* Motion at 24), Plaintiff has also conceded that point. *See Schwartz, Alvarez,* and *Chamblee, supra.*

**VII.**     **Plaintiff Fails to Refute the Basis for Alarm.com's Alternative Motion to Strike.**

Finally, as to Alarm.com's alternative motion to strike, Plaintiff contends that his superfluous "historical allegations" that "consumers have complained about receiving calls transmitting the identical prerecorded voice message, the myriad online complaints regarding Defendant's unsolicited practices, and the fact that Alarm.com has been previously sued over its TCPA violations, are directly relevant to a determination of whether Alarm.com's TCPA violations in this action were 'willful' or 'knowing'" for treble damages purposes. Opp. at 20. As noted above and in the Motion, however, those other prerecorded messages that Plaintiff cites are not "identical" as Plaintiff contends, and the anonymous online "complaints" upon which Plaintiff bases his claims are on third party websites that do not connect the at-issue call or texts to, nor mention, Alarm.com. *See* Sections I and III *supra*; *see also* Motion at 9, 14, 23 & fns. 8 & 9. Again, that Alarm.com has been involved in *other* previous TCPA cases does not support an inference that Alarm.com is liable for the at-issue call or text messages in *this* case, as one judge in those previous cases noted. *See* Motion at 23 (citing *Fisher*). The real and sole purpose for including these allegations is to paint Alarm.com in a false negative light, and not to plead facts supporting the alleged violations in this case. Plaintiff fails to cite any cases holding that such allegations are proper. They are not and must be stricken.

## CONCLUSION

For all the reasons stated above and in the Motion, Defendant Alarm.com respectfully requests that the Court enter an order dismissing the Complaint in its entirety and with prejudice, and granting Alarm.com all other relief the Court deems just and proper.

Dated: July 22, 2020                    Respectfully submitted,

                                        By: /s/ Andrew Zimmitti
                                             Andrew Zimmitti
                                             John W. McGuinness (Admitted *Pro Hac Vice*)
                                             MANATT, PHELPS & PHILLIPS, LLP
                                             1050 Connecticut Avenue, NW, Suite 600
                                             Washington, D.C. 20036
                                             Telephone: 202-585-6500
                                             Facsimile: 202-585-6600
                                             azimmitti@manatt.com
                                             jmcguinness@manatt.com

                                             A. Paul Heeringa (Admitted *Pro Hac Vice*)
                                             MANATT, PHELPS & PHILLIPS, LLP
                                             151 North Franklin Street, Suite 2600
                                             Chicago, IL 60606
                                             Telephone: 312-529-6308
                                             Facsimile: 312-529-6315
                                             pheeringa@manatt.com

                                             *Attorneys for Defendant*
                                             *Alarm.com Incorporated*

21

## <u>CERTIFICATE OF SERVICE</u>

I certify that on, July 22, 2020, a true and correct copy of the foregoing document was electronically filed with the Court's ECF system to be sent via the electronic notification system to all counsel of record in the above-captioned matter.

By: /s/ Andrew Zimmitti
Andrew Zimmitti
MANATT, PHELPS & PHILLIPS, LLP
1050 Connecticut Avenue, NW, Suite 600
Washington, D.C. 20036
Telephone: 202-585-6500
Facsimile: 202-585-6600
azimmitti@manatt.com